SONIC SYSTEMS INTERNATIONAL, INC., Appellant,

v.

Randy CROIX, Eddie Croix Insurance Agency, Inc., and Texas Mutual Insurance Company f/k/a Texas Worker's Compensation Insurance Fund, Appellee.

No. 14–07–00103–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 27, 2008.

Rehearing Overruled March 5, 2009.

378

Lancelot P. Olinde, Jr., Houston, Robert Higgason, Spring, for appellant.

Charles W. Hurd, Stacy H. Thompson, Mary A. Keeney, Willard Tinsley, Houston, for appellee.

Panel consists of Justices FOWLER, FROST, and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

Appellant, Sonic Systems International, Inc. ("Sonic"), sued appellee, Texas Mutual Insurance Company f/k/a Texas Worker's Compensation Insurance Fund ("TMI"), based on TMI's denial of insurance coverage relative to a work-related injury sustained by a Sonic employee. Sonic also sued appellees, Randy Croix and Eddie Croix Insurance Agency, Inc. (collectively "the Croix Parties"), based on their alleged failure to properly procure insurance to cover the employee's claims. The trial court granted separate motions for summary judgment filed by TMI and the Croix Parties. The trial court rendered a final judgment that Sonic take nothing from all appellees. Sonic presents four appellate issues, challenging both summary judgments.

We reverse the portions of the judgment ordering that Sonic take nothing on all its contractual and extra-contractual causes of action against TMI to the extent they are based on TMI's denial of the claim for Texas workers' compensation benefits at issue in this suit. We affirm the portions of the judgment ordering that Sonic take nothing on all its contractual and extra-contractual causes of action to the extent they are not based on TMI's denial of the Texas workers' compensation claim. We affirm the summary judgment on Sonic's request for declaratory relief. We affirm the judgment in favor of the Croix Parties.

## I. BACKGROUND

The history of this suit is somewhat convoluted, but the pleadings and undisputed summary judgment evidence establish the following pertinent background.

### A. Sonic's Policy

Sonic performs testing in the nuclear and petro-chemical industries. TMI issued a "Workers' Compensation And Employers Liability Insurance Policy" ("the policy") to Sonic, effective March 2, 1996 to March 2, 1997. The Croix Parties were the agents who procured the policy on Sonic's behalf. The policy provided that TMI would promptly pay when due the benefits required of Sonic by Texas workers' compensation law. The policy also included an "Other States Endorsement," requiring TMI to reimburse Sonic for amounts it was required to pay as benefits by the workers' compensation laws of certain other states, including Alabama. The endorsement applied to "temporary operations only," which, by definition, excluded operations performed by Sonic "at or from a permanent location" or "under contract except for contract trucking."

### B. Cochran's Injury and Texas Workers' Compensation Claim

On February 24, 1997, Sonic was performing services at a nuclear plant in Alabama pursuant to a contract with Southern Nuclear Operating Services. Gary Cochran, a Sonic employee and Alabama resident, injured his back while working at the plant. Sonic reported Cochran's injury to the Texas Worker's Compensation Commission ("TWCC").

In July 1997, Cochran filed a claim for benefits under the Texas Workers' Compensation act ("the Texas act"). TMI dis-

puted Cochran's claim for two reasons: (1) Cochran was an independent contractor—not an employee of Sonic—at the time of his injury; and (2) Cochran did not satisfy the statutory provision prescribing the circumstances under which an employee injured while working in another jurisdiction is entitled to rights and remedies under the act.[1] At that point, neither Cochran nor Sonic pursued Cochran's claim through the administrative process prescribed by the act.[2] Several months later, Sonic began making voluntary compensation payments to Cochran.

## C. The Underlying Suit

Then, in 1999, Sonic filed the suit underlying this appeal.[3] Sonic has amended its petition several times, and we will later outline its causes of action in more detail. In essence, Sonic's causes of action against TMI rest on its acts relative to acquisition and underwriting of the policy and its refusal to provide coverage for claims arising from Cochran's injury. Sonic's complaints against the Croix Parties center on their alleged failure to procure workers' compensation coverage for Sonic's out-of-state employees, including Cochran.

## D. Cochran's Alabama Claim

In the same year, Cochran pursued a claim under the Alabama workers' compensation act ("the Alabama act"). According to Cochran, he filed the Alabama claim because TMI had disputed his Texas claim and the Alabama statute of limitations would shortly expire. Sonic did not have Alabama workers' compensation insurance. In July 2001, an Alabama court rendered judgment against Sonic, awarding Cochran income and medical benefits.[4] TMI has refused to reimburse Sonic under the Other States Endorsement for the Alabama judgment, contending that Sonic's project at issue was excluded from the definition of "temporary operations."

## E. Sonic's Return to the TWCC

Several days after the Alabama court rendered judgment, Sonic returned to the TWCC. As a subclaimant, Sonic sought reimbursement from TMI for benefits Sonic voluntarily paid to Cochran.[5]

After a contested case hearing, the TWCC hearing officer determined in pertinent part: (1) Cochran was an employee of Sonic, sustained a compensable injury while working in Alabama, and was entitled to all rights and remedies under the

1. *See* Tex. Lab.Code Ann. § 406.071 (Vernon 2006).

2. *See generally* Tex. Lab.Code Ann. §§ 410.001–.308 (Vernon 2006 & Supp.2007) (prescribing four-tier system for adjudication of disputes through the workers' compensation system).

3. According to TMI, Sonic also sought and received a refund of premiums for out-of-state employees it had erroneously included on its Texas payroll. Although Sonic raised this refund as an affirmative defense in this suit, it did not move for summary-judgment on any ground related to the refund. Accordingly, we will not further elaborate on the extent to which TMI refunded premiums or the effect of the refund.

4. At one point, Sonic asserts that the Alabama judgment was in excess of $750,000. At another point, Sonic suggests $750,000 consists of the Alabama judgment plus Sonic's other damages resulting from the judgment. We find the judgment somewhat difficult to construe. However, it appears the court awarded at least $340,000 in income benefits, unspecified past and future medical expenses, and attorney's fees.

5. *See* Tex. Lab.Code Ann. § 409.009 (Vernon 2006) (providing generally that a person may file a subclaim with the TWCC if the person has provided compensation and sought and been refused reimbursement from the insurance carrier).

Texas act; (2) however, pursuant to section 406.075(a) of the act, Cochran was barred from recovering Texas benefits because he elected to pursue a remedy and recover workers' compensation benefits under Alabama law; *see* Tex. Lab.Code Ann. § 406.075(a) (Vernon 2006) (providing, "An injured employee who elects to pursue the employee's remedy under the workers' compensation laws of another jurisdiction and who recovers benefits under those laws may not recover under this subtitle."); and (3) Sonic, as Cochran's subclaimant, was likewise precluded from reimbursement of benefits voluntarily paid to Cochran.

Only Sonic challenged the hearing officer's decision to a TWCC appeals panel. Sonic appealed the hearing officer's determination that Cochran was barred from recovering Texas benefits by his election of Alabama remedies and thus Sonic was not entitled to reimbursement of benefits voluntarily paid to Cochran. The appeals panel affirmed the hearing officer's decision.[6]

### F. Sonic's Judicial Review Case

Sonic filed a petition for judicial review of the TWCC appeals panel decision. The judicial review case and underlying suit were consolidated in the trial court. At TMI's request, the trial court abated the underlying suit pending resolution of the judicial review case. Sonic and TMI filed cross-motions for summary judgment in the judicial review case. The trial court granted Sonic's motion and denied TMI's motion. The trial court reversed the appeals panel's decision that Sonic was not entitled to reimbursement for voluntary payments because Cochran made an elec-

tion of remedies. The trial court awarded $78,023.89 to Sonic. Despite Sonic's request, the trial court refused to lift the order abating the underlying suit.

TMI appealed the trial court's summary judgment to our court. Sonic also filed a mandamus petition in our court, seeking to compel the trial court to lift its abatement order. We consolidated the appeal and mandamus petition. *See Tex. Mut. Ins. Co. v. Sonic Sys. Int'l, Inc.*, 214 S.W.3d 469, 471 (Tex.App.–Houston [14th Dist.] 2006, pet. denied).

With respect to TMI's appeal, we reversed the summary judgment and reinstated the decision of the TWCC appeals panel. *Id.* at 478. Subsequently, the Texas Supreme Court denied Sonic's petition for review. Therefore, TWCC's determinations that Cochran was barred from recovering benefits by his election of remedies and Sonic was barred from obtaining reimbursement of its voluntary payments are now final. Relative to Sonic's mandamus petition, we held that the trial court abused its discretion by continuing to abate the underlying suit and conditionally granted mandamus relief. *Id.* at 482.

### G. Resolution of the Underlying Suit in the Trial Court

With the abatement order lifted, prosecution of the underlying suit proceeded in the trial court. The Croix Parties filed a motion for summary judgment, and TMI filed an amended motion for summary judgment. On October 13, 2006, the trial court signed separate orders granting both motions. On November 7, 2006, the trial court signed a final judgment incorporating its orders on the motions for summary judgment and ruling that Sonic take noth-

---

**6.** The appeals panel specifically expressed no opinion on whether Sonic was entitled to reimbursement under the "Other States Endorsement" for benefits it was required to pay pursuant to Alabama workers' compensation law. The appeals panel recognized that the TWCC was limited to resolving issues concerning compensation under the Texas act.

ing on all its causes of action against both appellees.

## II. STANDARD OF REVIEW

Both appellees filed traditional motions for summary judgment. A party moving for traditional summary judgment must establish that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). Specifically, a defendant moving for summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *Lundstrom v. United Servs. Auto. Ass'n–CIC*, 192 S.W.3d 78, 84 (Tex.App.– Houston [14th Dist.] 2006, pet. denied). If the movant facially establishes its right to summary judgment, the burden shifts to the non-movant to raise a genuine issue of material fact sufficient to defeat summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.

1995); *Lundstrom*, 192 S.W.3d at 84. We review a summary judgment de novo. *Knott*, 128 S.W.3d at 215. We take all evidence favorable to the nonmovant as true and indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Id.*

## III. SUMMARY JUDGMENT IN FAVOR OF TMI

We will first address Sonic's third and fourth issues, regarding the summary judgment in favor of TMI. Preliminarily, to define the issues on appeal, we will outline Sonic's causes of action, TMI's summary-judgment grounds, and the extent to which Sonic challenges the summary judgment.

### A. Sonic's Causes of Action

In its live petition, Sonic asserted the following causes of action against TMI: negligence;[7] gross negligence; breach of contract;[8] breach of the duty of good faith and fair dealing;[9] request for declaratory relief;[10] violations of Texas Insurance Code Chapter 541 (prohibiting unfair or deceptive acts and practices in the insurance business);[11] violations of Texas In-

---

7. Sonic alleged that TMI was negligent by: failing to adequately provide underwriting for Sonic's request for workers' compensation insurance; failing to secure or recommend acquisition of workers' compensation insurance for Sonic's out-of-state employees; failing to properly investigate Cochran's claim; advising Cochran there was no coverage for his claim; and failing to settle or otherwise appropriately handle the claim.

8. Sonic pleaded that TMI breached the contract by failing to provide coverage for Cochran's Texas workers' compensation claim and refusing to provide coverage under the Other States Endorsement for Alabama workers' compensation benefits.

9. Sonic asserted that TMI violated this duty by failing to properly investigate, evaluate, negotiate, settle, or otherwise appropriately handle Cochran's claim for benefits.

10. Sonic requested declaratory relief that Cochran was entitled to all rights and remedies under the act and there was coverage for his claim under the policy.

11. We note that Insurance Code article 21.21 was effective when Sonic filed suit but was subsequently repealed and recodified as Chapter 541. However, the pertinent provisions of Chapter 541 are substantially the same as those in article 21.21. *See* Act of June 8, 1995, 74th Leg., R.S., ch. 414, § 11, 1995 Tex. Gen. Laws 2988 (amended 2001) *(repealed and recodified 2003)(current version at* Tex. Ins.Code Ann. §§ 541.001–.061 (Vernon Supp.2008)); Act of May 17, 1995, 74th Leg., R.S., ch. 414, § 13, 1995 Tex. Gen. Laws 2988, 3000–001 (repealed and recodified 2003) (current version at Tex. Ins.Code Ann. § 541.151 (Vernon Supp.2008)). Therefore, we will cite the Chapter 541 provisions. In its petition, Sonic recited the following list

surance Code Chapter 542, Subchapter B (governing prompt payment of claims);[12] and violations of the DTPA (prohibiting deceptive acts or practices in any trade or commerce).[13]

Sonic pleaded that its damages caused by TMI's actions included, but were not limited to, the following: attorneys' fees incurred by Sonic in connection with Cochran's Texas and Alabama workers' compensation claims; the amount of the Alabama judgment; medical and compensation benefits paid to Cochran; loss of profits from Sonic's inability to develop business due to financial hardship resulting from Cochran's claims; punitive damages; and attorneys' fees to prosecute this suit.

### B. TMI's Summary–Judgment Grounds

TMI moved for summary judgment on all Sonic's causes of action. In the motion, TMI suggested that all Sonic's causes of action, except its request for declaratory relief, were based on two underlying acts: (1) TMI's denial of Cochran's Texas workers' compensation claim; and (2) TMI's refusal to reimburse Sonic under the Other States Endorsement for benefits it was required to pay pursuant to the Alabama act. As TMI suggested, these alleged obligations to provide coverage arose from independent portions of the policy: Cochran's Texas claim was purportedly covered by the Texas workers' compensation portion of the policy, whereas the judgment rendered against Sonic pursuant to the

---

of alleged Chapter 541 violations: making, issuing, or circulating or causing to be made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting with respect to a policy issued or to be issued: the terms of the policy, or the benefits or advantages promised by the policy, see Tex. Ins. Code Ann. § 541.051(1)(A), (B); misrepresenting to a claimant a material fact or policy provision relating to coverage at issue; see id. § 541.060(a)(1); failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear; see id. § 541.060(a)(2); failing within a reasonable time to affirm or deny coverage of a claim to a policy holder; see id. § 541.060(a)(4)(A); misrepresenting an insurance policy by making an untrue statement of material fact; see id. § 541.061(1); misrepresenting an insurance policy by failing to state a material fact necessary to make other statements made not misleading; see id. § 541.061(2); and misrepresenting an insurance policy by making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact; see id. § 541.061(3). Sonic also cites its DTPA allegations to support the Chapter 541 cause of action. See Tex. Ins.Code Ann. § 541.151 (subject to certain requisites, authorizing cause of action for act enumerated in Chapter 541 or DTPA section 17.46(b));

Tex. Bus. & Com.Code Ann. § 17.46(b) (Vernon Supp.2008).

**12.** Sonic alleged that TMI violated Chapter 542 by failing to timely acknowledge, investigate, accept, and pay Cochran's claim.

**13.** Sonic pleaded the following acts prohibited by the DTPA: representing that the insurance policy had characteristics, ingredients, uses, or benefits which it did not have; representing that the insurance policy was of a particular standard, quality, or grade, when it was of another; advertising the insurance policy with intent not to sell it as advertised; representing that the agreement conferred or involved rights, remedies, or obligations which it did not have or involve; and failing to disclose information concerning the insurance policy which was known at the time of the transaction where such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. See Tex. Bus. & Com.Code Ann. § 17.46(b)(5), (7), (9), (12), (24) (Vernon Supp.2008). Further, Sonic cites its Chapter 541 allegations to support the DTPA claim. See Tex. Bus. & Com.Code Ann. § 17.50(a) (Vernon Supp.2008) (subject to certain requisites, authorizing cause of action for act enumerated in section 17.46(b) or Chapter 541, sections 541.001–.061).

Alabama act was purportedly covered under the Other States Endorsement.

TMI presented two individual arguments in accordance with these independent portions of the policy. First, as we will later discuss in more detail, TMI argued that, to the extent Sonic's contractual and extra-contractual causes of action are based on TMI's denial of Cochran's Texas workers' compensation claim, they are precluded by *American Motorists Insurance Co. v. Fodge,* 63 S.W.3d 801 (Tex.2001).

Second, TMI challenged Sonic's contractual and extra-contractual causes of action to the extent they were based on TMI's refusal to reimburse Sonic under the Other States Endorsement for benefits it was required to pay pursuant to the Alabama act.[11]

Finally, TMI separately attacked Sonic's request for a declaratory judgment that Cochran was entitled to all rights and remedies under the Texas act and there was coverage for his claim under the policy. TMI argued that the TWCC had exclusive jurisdiction to make that determination and its decision that Cochran was barred from recovering benefits by his election of remedies precluded the trial court from granting the requested relief.

## C. Sonic's Appellate Issues

On appeal, Sonic assails only the portion of TMI's motion for summary judgment contending that *Fodge* precludes Sonic's contractual and extra-contractual causes of action to the extent they are based on TMI's denial of Cochran's Texas workers' compensation claim.

Sonic presents no argument attacking the portion of TMI's motion challenging Sonic's contractual and extra-contractual causes of action to the extent they are based on TMI's refusal to reimburse Sonic for benefits it was required to pay under the Alabama act. *See* Tex.R.App. P. 38.1(h) (providing appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record); *San Saba Energy, L.P. v. Crawford,* 171 S.W.3d 323, 337 (Tex.App.–Houston [14th Dist.] 2005, no pet.) (recognizing appellant must present some specific argument and analysis to attack summary-judgment ground).

Moreover, Sonic does not controvert TMI's suggestion that all contractual and extra-contractual causes of action are based on TMI's denial of Cochran's Texas claim or refusal to reimburse Sonic for benefits it was required to pay under the Alabama act. Therefore, Sonic does not contend that the trial court granted more relief than requested in TMI's motion for summary judgment. *See Beathard Joint Venture v. W. Houston Airport Corp.,* 72 S.W.3d 426, 436 (Tex.App.–Texarkana 2002, no pet.) (recognizing appellant must raise issue on appeal that more relief than requested in motion was improperly granted in summary judgment order); *Toonen*

14. In this section of its motion, TMI contended it was not liable for contractual or extra-contractual damages based on its refusal to reimburse Sonic for Alabama benefits because there was no coverage under the Other States Endorsement. However, TMI also included some arguments within this section that do not seem related solely to denial of coverage under the Other States Endorsement. For instance, TMI contended it did not owe negligence duties as alleged by Sonic.

Apparently, this argument could have been asserted to challenge all Sonic's negligence claims. However, TMI clearly limited all grounds presented in this section of its motion to negating liability for denial of coverage under the Other States' Endorsement. Accordingly, we consider TMI's *Fodge* argument as the only summary-judgment ground challenging Sonic's causes of action to the extent they are based on denial of the Texas claim.

*v. United Servs. Auto. Ass'n.*, 935 S.W.2d 937, 942 (Tex.App.–San Antonio 1996, no writ) (same).

Finally, Sonic presents no argument attacking summary judgment on Sonic's request for declaratory relief.

Accordingly, we will address solely whether TMI established it was entitled to summary judgment on its *Fodge* ground.

## D. TMI's *Fodge* Argument

Relying entirely on *Fodge*, TMI asserted that Sonic is precluded from recovering damages based on TMI's denial of Cochran's workers' compensation claim under the Texas act because the TWCC determined Cochran was barred from recovering Texas benefits by his election of Alabama remedies.

In *Fodge*, an employee filed a claim for Texas workers' compensation benefits. 63 S.W.3d at 802. The carrier denied the claim. *Id.* A TWCC hearing officer found that the employee had suffered a compensable injury and ordered payment of temporary income benefits. *Id.* In the TWCC proceeding, the employee never sought medical benefits. *Id.* Neither the employee nor the carrier appealed the hearing officer's decision. *Id.* The employee subsequently sued the carrier for breach of the duty of good faith and fair dealing, negligence, fraud, violations of the DTPA, and violations of the Texas Insurance Code. *Id.* at 802–03. The trial court granted the carrier's plea to the jurisdiction and dismissed the case. *Id.* at 803. Ultimately, the Texas Supreme Court affirmed in part and reversed and remanded in part. *See id.* at 804–05.

The court noted that the employee essentially asserted three claims, seeking the following damages: (1) additional income and medical benefits not addressed by the TWCC; (2) damages caused by the carrier's alleged bad-faith denial of those benefits; and (3) damages caused by the carrier's alleged bad-faith delay in paying temporary income benefits awarded by the TWCC. *See id.* at 803.[15]

The court first recognized that the act vested the TWCC with sole power to award compensation benefits, subject to judicial review. *Id.* Further, the TWCC had jurisdiction of disputes over income benefits, preauthorization of medical care, and reimbursement of medical expenses. *Id.* The court then stated:

> Because only the [TWCC] can determine a claimant's entitlement to compensation benefits, . . . "[a]llowing courts to award damages for wrongful deprivation of benefits would circumvent the Commission's jurisdiction" and therefore could not be permitted. Thus, just as a court cannot award compensation benefits, except on appeal from a [TWCC] ruling, *neither can it award damages for a denial in payment of compensation benefits without a determination by the [TWCC] that such benefits were due.*

*Id.* at 804 (emphasis added) (citations omitted).

Applying this principle, in the holding pertinent to TMI's present argument, the court concluded that the trial court lacked jurisdiction over the employee's claim for damages allegedly caused by the carrier's denial of additional income and medical

---

**15.** Specifically, the employee alleged that the carrier (1) underpaid and delayed payment of temporary income benefits, (2) denied and delayed payment for medical treatment and prescribed medication, (3) misinformed her that she was not entitled to medical care and could not seek emergency room care without a doctor referral or prior approval, (4) failed to communicate promptly with her, and (5) failed to investigate her claim promptly and reasonably. *Fodge*, 63 S.W.3d at 802.

benefits. *Id.* at 804–05. Because the TWCC had not determined that any additional income or medical benefits were due, the trial court lacked jurisdiction to adjudicate the employee's claim even if presented under theories of negligence, fraud, and statutory violations. *Id.* However, the court reasoned that abatement, not dismissal, was appropriate on this claim. *Id.* at 805. The court could not discern whether the time for the employee to seek such benefits in the TWCC had expired. *Id.* But, the court stated that, if the time to seek those benefits had expired, the employee's claim for damages would no longer be viable and should be dismissed. *Id.*[16]

As TMI asserts, the TWCC determined that Cochran, and Sonic as subclaimant, were barred from recovering workers' compensation benefits due to Cochran's election of remedies. Further, this determination was affirmed through the judicial review process. Thus, citing the above-quoted language, TMI contends a court may not award damages to Sonic resulting from TMI's denial of Cochran's workers' compensation claim under the Texas act.

### E. Sonic's Arguments Regarding *Fodge*

Sonic presents two interrelated issues attacking TMI's *Fodge* ground. In its third issue, Sonic posits that the trial court misinterpreted and improperly applied *Fodge* because: (1) *Fodge* involved only jurisdictional issues; (2) the *Fodge* court addressed only an employee's claims against a carrier based on the act; in contrast, the present suit concerns Sonic's rights, as employer/insured, against its carrier, based on contract and tort law; and (3) unlike the *Fodge* employee, Sonic obtained a TWCC ruling that Cochran was entitled to rights and remedies under the act.

In its fourth issue, Sonic contends that TMI's reliance on *Fodge* was precluded by the doctrine of res judicata. According to Sonic, TMI is attempting to relitigate the issue of coverage for Cochran's workers' compensation claim, which has been resolved through the process prescribed by the Texas act.[17] As Cochran asserts, TMI did not appeal the TWCC's determination that Cochran was entitled to rights and remedies under the Texas act. *See* Tex. Lab.Code Ann. § 410.169 (providing that decision of hearing officer regarding benefits is final absent timely appeal by a party).

However, TMI does not attempt to relitigate this determination. Rather, TMI contends the controlling portion of the TWCC's ruling, for purposes of *Fodge*, is the ultimate decision that Cochran was barred from recovering benefits to which he was otherwise entitled because he made an election of remedies. Therefore, Sonic's "res judicata" contention is actually a complaint that TMI focuses on the wrong portion of the TWCC ruling when relying on *Fodge*. As Sonic notes, the *Fodge* employee could not prosecute a claim based on the carrier's refusal to pay certain benefits when the TWCC had never considered whether benefits were due. *See*

---

**16.** The court also concluded that the trial court had jurisdiction over Fodge's claim that the carrier unduly delayed payment of temporary income benefits awarded by the TWCC because the TWCC had indeed determined that benefits were due. *Fodge,* 63 S.W.3d at 805. The court further held that the trial court lacked jurisdiction over the employee's claim for additional income and medical ben-

efits because only the TWCC had authority to award those benefits. *Id.*

**17.** *See Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 652 (Tex.1996) (recognizing res judicata precludes relitigation of claims that have been finally adjudicated or arise out of the same subject matter and could have been litigated in the prior action).

*Fodge,* 63 S.W.3d at 804–05. However, as Sonic also suggests, the *Fodge* court did not address the present situation, in which the TWCC determined that an employee sustained a compensable injury and was entitled to rights and remedies under the act, yet he was barred from recovering benefits based on his election of remedies. *See id.* Similar to its third issue, Sonic suggests that the operative TWCC ruling is the determination that Cochran was entitled to rights and remedies under the Texas act. Therefore, Sonic argues that *Fodge* does not preclude Sonic's causes of action based on denial of Cochran's workers' compensation claim under the Texas act.

### F. Analysis

Initially, we reject some of Sonic's arguments regarding the import of *Fodge.* First, we disagree with Sonic's contention that *Fodge* is pertinent only to jurisdictional issues. The court directly addressed the trial court's jurisdiction; however, the court suggested that an employee lacks a viable cause of action for damages stemming from refusal to pay workers' compensation benefits absent the TWCC's determination that such benefits were due. *See Fodge,* 63 S.W.3d at 804–05.

We also reject Sonic's suggestion that *Fodge* involved an employee's claims against a carrier based solely on the Texas act and thus is not controlling when an employer/insured asserts contract and tort claims against a carrier for denial of an employee's claim. As we have explained, the *Fodge* claimant did not merely seek benefits under the Texas act; rather, she also asserted tort and statutory claims against the carrier based on its failure to pay benefits allegedly due. *See id.* at 803–

05; *Pickett v. Tex. Mut. Ins. Co.,* 239 S.W.3d 826, 835–36 (Tex.App.–Austin 2007, no pet.) (recognizing *Fodge* applies whenever the plaintiff's claims, even if tort or statutory, are based on carrier's denial of benefits). Moreover, when applicable, *Fodge* would preclude a cause of action whether the plaintiff is the employee or employer. Their causes of action would obviously be based on the same denial of benefits, and pertinent TWCC determinations would be binding on the employee and employer. *See In re Tex. Mut. Ins. Co.,* 157 S.W.3d 75, 77–82 (Tex.App.–Austin 2004, orig. proceeding) (applying *Fodge* when employer's assignee sued carrier for breach of contract and negligence based on lack of coverage for employee's workers' compensation claim).

■ Despite our rejection of these arguments, we are bound by this court's previous opinion in Sonic I to conclude that *Fodge* does not preclude Sonic's contractual and extra-contractual causes of action to the extent they are based on denial of Cochran's claim for Texas workers' compensation benefits. *Sonic Sys. Int'l,* 214 S.W.3d at 478–82.[18] In addition to TMI's appeal in the judicial review case, this court also considered Sonic's mandamus petition complaining of the trial court's refusal to lift abatement of the present suit. *See id.* Citing *Fodge,* TMI maintained that the trial court was required to abate Sonic's causes of action based on denial of Cochran's workers' compensation claim pending final resolution of the judicial review case. *See id.* at 480. TMI argued that, if the workers' compensation claim was barred due to Cochran's election of remedies, the present suit would also be barred; thus, resolution of the workers'

---

**18.** Although Sonic has since added some causes of action, when this court issued Sonic I, Sonic had alleged contractual and extra-

contractual causes of action against TMI, which we referenced collectively as the "contract claims." *See Sonic,* 214 S.W.3d at 481.

compensation claim was prerequisite to disposition of the present suit. *Id.* at 481.

However, this court rejected TMI's argument. *See id.* at 481–82. Significantly, this court recognized:

Sonic's causes of action are similar to those asserted in *Fodge*. However, in this case, the issues within the exclusive jurisdiction of the TWCC that are possibly relevant to Sonic's contract claims have been finally determined—that is, Cochran was Sonic's employee at the time he suffered the compensable injury ... and the issues involved in the judicial review case—Cochran's election of remedies and Sonic's reimbursement claim—are discrete matters from those raised by Sonic's contract claims. . . .

While Sonic's [contract claims] might be barred if it was determined that Cochran was not Sonic's employee or he did not suffer a compensable injury, those issues have been finally determined. . . . Here, Sonic's contract claims do not depend on the final determination of Cochran's election of remedies ... or Sonic's right to reimbursement. . . .

However, at this point in the proceedings, the issues to be finally determined in the judicial review case are not determinative of Sonic's contract claims, and continued abatement of the contract claims does not serve concerns raised in *Fodge* . . . . Therefore, we conclude the trial court's ... orders of abatement are an abuse of discretion.

*Id.* at 481–82.

TMI now urges that this court made the above-quoted pronouncement solely because Sonic also asserted causes of action in this suit based on denial of coverage for the Alabama judgment under the Other States Endorsement, which are independent of any TWCC determinations. Indeed, in a footnote, this court suggested that the pending causes of action also re-lated to denial of coverage under the Other States Endorsement. *See id.* n. 19. However, this court did not state that abatement should be lifted because the *only* viable causes of action after the TWCC's rulings related to denial of coverage under the Other States Endorsement. *See id.* at 481–82. To the contrary, this court emphasized that the only TWCC determination possibly relevant to Sonic's causes of action in this suit was the ruling that Cochran was Sonic's employee and suffered a compensable injury. *See id.* Clearly, this determination was relevant to causes of action based on TMI's denial of Cochran's Texas workers' compensation claim—not causes of action based on TMI's refusal to reimburse Sonic under the Other States Endorsement for benefits it was required to pay pursuant to the Alabama act.

Consequently, this court concluded that, in light of this determination, Sonic was allowed to prosecute its causes of action based on denial of Cochran's Texas claim. *See id.* at 481–82. Moreover, this court held, even if the TWCC's ruling that Cochran was barred from recovering Texas benefits by his election of remedies were affirmed, *Fodge* would not preclude Sonic's causes of action in this suit. *See id.* Accordingly, we held that the trial court abused its discretion by abating the causes of action in this suit. *See id.* If the causes of action were precluded by the TWCC's ruling that recovery of benefits was barred by the election of remedies, then continued abatement would have been appropriate until that issue was finally resolved though the judicial review case.

Thus, to the extent that Sonic seeks damages based on TMI's denial of Cochran's Texas workers' compensation claim, we are bound by our previous holding to conclude that Sonic's causes of action are not precluded by *Fodge*. Accordingly, the

trial court erred by granting summary judgment on this ground. We sustain Sonic's third and fourth issues.

### IV. SUMMARY JUDGMENT IN FAVOR OF THE CROIX PARTIES

Next, we address Sonic's first and second issues, assailing the summary judgment in favor of the Croix Parties. Sonic sued the Croix Parties for negligence, gross negligence, violations of Chapters 541 and 542 of the Texas Insurance Code, and DTPA violations. In its brief, Sonic specifically asserts that it challenges summary judgment on the causes of action for negligence, gross negligence, and DTPA violations. Sonic alleged the same DTPA and Chapter 541 claims against the Croix Parties that it presented against TMI. Thus, we liberally construe the brief as also challenging summary judgment on the Chapter 541 claim. Sonic does not appeal summary judgment on its Chapter 542 claim. Therefore, we must affirm summary judgment on that claim.[19]

The Croix Parties presented separate summary-judgment grounds challenging the causes of action for (1) negligence, (2) gross negligence, and (3) Chapter 541 and DTPA violations. Further, the Croix Parties asserted that all Sonic's causes of action were barred by *Fodge*. In its first appellate issue, Sonic contends the trial court erred by granting summary judgment on the grounds presented to challenge each cause of action. In its second issue, Sonic asserts the trial court erred if it granted summary judgment based on *Fodge*. Because the trial court did not specify the ground on which summary

judgment was granted on each cause of action, we will affirm the judgment if any theory advanced in the motion is meritorious. *See Zarzana v. Ashley*, 218 S.W.3d 152, 157 (Tex.App.–Houston [14th Dist.] 2007, pet. struck) (citing *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex.2004)). We conclude the trial court properly granted summary judgment on the separate grounds presented to challenge each cause of action.

### A. Negligence

■ The elements of a negligence claims are (1) legal duty owed by one person to another, (2) breach of that duty, and (3) damages proximately caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex.2002). The Croix Parties moved for summary judgment on the grounds that they did not breach a duty to Sonic, and, alternatively, Sonic did not sustain damages proximately caused by any breach.

■ An insurance agent owes the following common-law duties to a client for whom the agent undertakes to procure insurance: (1) to use reasonable diligence in attempting to place the requested insurance; and (2) to inform the client promptly if unable to do so. *May v. United Servs. Ass'n of Am.*, 844 S.W.2d 666, 669 (Tex. 1992); *Critchfield v. Smith*, 151 S.W.3d 225, 230 (Tex.App.–Tyler 2004, pet. denied); *Moore v. Whitney–Vaky Ins. Agency*, 966 S.W.2d 690, 692 (Tex.App.–San Antonio 1998, no pet.).

Sonic pleaded that the Croix Parties breached this duty by:

---

19. Sonic pleaded that "Defendants" violated Chapter 542 of the Texas Insurance Code, governing prompt payment of claims, by failing to timely acknowledge, investigate, accept, and pay "the claim." This allegation seems directed at TMI, as the carrier, and not the Croix Parties, as agents. In fact, on ap-

peal, Sonic does not reference this cause of action when mentioning its claims against the Croix Parties. Nevertheless, to the extent Sonic did allege this cause of action against the Croix Parties, we must affirm the unchallenged summary judgment on this claim.

1. failing to properly solicit workers' compensation insurance for Sonic's employees who lived and worked out of state;

2. failing to properly solicit workers' compensation insurance for Sonic; and

3. improperly placing Sonic's request for workers' compensation insurance with TMI.

In their motion for summary judgment, the Croix Parties argued they did not breach their duty because they obtained the insurance requested by Sonic.

### 1. Summary Judgment Evidence

We will first review the summary-judgment evidence regarding the insurance requested by Sonic. The undisputed evidence demonstrated that the Croix Parties first obtained a Texas workers' compensation and employer liability policy on Sonic's behalf in early 1994, and it was subsequently renewed for several policy periods.

To support their motion for summary judgment, the Croix Parties presented, inter alia, Randy Croix's affidavit and excerpts from his deposition, excerpts from the deposition of Nita Harrivel, a Sonic accountant primarily responsible for communications with Croix,[20] and several letters between Sonic and Croix.

According to Croix, when he and Sonic first discussed the possibility of his obtaining workers' compensation insurance on Sonic's behalf, *he inquired about out-of-state operations.* Sonic informed him that it used only Texas employees who worked temporarily in other states. In contrast, Harrivel testified that, from the outset of the relationship, Sonic made clear it had

employees who lived and worked outside Texas.

On February 10, 1994, Bill Aston, then-president of Sonic, wrote the following letter to Croix:

Please be advised that [Sonic] has entered into an agreement for services with Southern Nuclear Operating Company. These services will be performed at various facilities in Alabama and Georgia and *may* be accomplished in part by residents of multiple states, including Alabama and Georgia.

Please find the attached requirements for insurance as delineated in the Southern Nuclear agreement. Please review and advise if [Sonic] should need any additional coverage or special consideration for this project.

Also, please keep these requirements in mind when placing our Worker's Compensation coverage, realizing the out-of-state project and employees.

(emphasis added). On the same day, Sonic sent Croix a substantially similar letter regarding a contract for services in Louisiana to possibility be performed by Louisiana residents.

In response, Croix sent Sonic a letter dated February 22, 1994, which included the reference line: "Workers Compensation for LA, GA, AL." Croix wrote:

As discussed, if you hire out-of-state employees, you must have coverage in those states. <u>Texas</u> employees are covered in most of the other states, but please contact us when you go out of state to confirm coverage is in effect.

[providing rates for coverage in these states]

---

**20.** Bill Aston, chief executive officer and former president of Sonic, testified that Harrivel was the main contact person between Sonic and Croix, assumed day-to-day responsibilities for dealing with Croix, and had the most knowledge about Sonic's procurement of insurance policies for the relevant years.

If any of these policies are needed, please provide at least 48 hours notice to process. Please call if we can further assist.

(emphasis in original).

In his affidavit, Croix averred that, three months later, Sonic contacted Croix expressing its desire to purchase a Louisiana policy, which Croix arranged. However, Sonic never requested purchase of workers' compensation policies in Alabama or Georgia.

On February 10, 1995, Croix sent a letter to Harrival providing a quotation for renewal of its Texas workers' compensation coverage for March 2, 1995 to March 2, 1996 (preceding the period for the policy at issue). Croix stated, "This policy covers Texas Employees only. You also have a Louisiana policy. If you have operations in other states, please let us know so we can make application arrangements for you in those states."

In his deposition, Croix confirmed he cautioned Sonic that there would not be coverage if it had permanent operations outside Texas or employed residents of other states. However, Sonic instructed him to obtain insurance only for Texas employees temporarily working out of state, except coverage for Louisiana operations and an Alaska project (which had previously been placed). Croix further testified that, in February 1996 (when the policy was renewed for the period at issue), he did not know whether Sonic had any operations or employees in Alabama.

Additionally, Harrivel testified that she was unaware of any communications between Sonic and the Croix, except the February 10, 1994 letter, advising him regarding the nature and extent of Sonic's Alabama operations. Further, Harrivel could not recall Sonic's informing Croix that Sonic had actually hired Alabama residents. Harrivel also explained that she did not consider purchasing an Alabama policy; she believed an Alabama policy was unnecessary because the project was not continuous or long-term, although it was conducted off and on for nine years.

**2. Analysis**

■ Preliminarily, we note that Sonic primarily complains regarding the Croix Parties' actions with respect to procurement of the Texas policy. However, Sonic suggests the Croix Parties should have also obtained an Alabama policy. We conclude the summary-judgment evidence negated a breach of duty under either scenario.

**a. Texas Workers' Compensation Policy**

Taking all evidence favorable to Sonic as true and indulging every reasonable inference and resolving any doubts in its favor, the evidence shows that Croix was informed Sonic generally used non-Texas residents to perform work in other states and *may* use Alabama residents to perform a specific contract in Alabama. However, except the Louisiana and Alaska situations, Sonic requested that the Croix Parties obtain only a policy covering "Texas employees" temporarily working in other states.

The Croix Parties did not breach their duty because they satisfied Sonic's request by securing a Texas workers' compensation policy. Section 406.071 of the act dictates the circumstances under which an employee who is injured while working in another state may recover Texas workers' compensation benefits:

(a) An employee who is injured while working in another jurisdiction … is entitled to all rights and remedies under this subtitle if:

(1) the injury would be compensable if it had occurred in this state; and

(2) the employee has significant contacts with this state or the employment is principally located in this state.

(b) An employee has significant contacts with this state if the employee was hired or recruited in this state and the employee:

(1) was injured not later than one year after the date of hire; or

(2) has worked in this state for at least 10 working days during the 12 months preceding the date of injury. Tex. Lab.Code Ann. § 406.071. The principal location of a person's employment is where: (1) the employer has a place of business at or from which the employee regularly works; or (2) the employee resides and spends a substantial part of the employee's working time. Tex. Lab.Code Ann. § 406.072 (Vernon 2006).

The term "Texas employees" is somewhat vague. Nevertheless, we conclude the Croix Parties obtained coverage for "Texas employees" injured while temporarily working in other states because the policy covered (1) persons who regularly worked at or from a Texas location; (2) Texas residents who spent a substantial part of their working time in Texas; and (3) in some instances, even persons who did not fit within the previous categories but had "significant contacts" with Texas. See id. §§ 406.071, 406.072.

Importantly, absent Cochran's election of remedies, the policy would have provided coverage for Cochran's Texas workers' compensation claim although he did not reside in Texas and apparently did not regularly work at or from a Texas location. The TWCC concluded Cochran had significant contacts with Texas because he was hired in Texas and was injured within one year after the date of hire. See id. § 406.071(b)(1). Although the TWCC further determined Cochran was barred from recovering Texas benefits because he elected a remedy under Alabama law, the Croix Parties obtained a policy which would otherwise have covered Cochran's Texas claim. Whether recovery would be barred by election of remedies was beyond Croix's control once it procured the policy.

In its summary-judgment response and on appeal, Sonic acknowledges the Croix Parties secured a policy that would have covered Cochran's Texas claim if not for the election of remedies. Regardless, Sonic complains about the Croix Parties' actions with respect to procurement of a Texas policy. Apparently, the gist of Sonic's complaint is that the Croix Parties should have obtained some other Texas policy that more clearly demonstrated coverage for Cochran's. Sonic suggests this alleged breach caused TMI to initially dispute coverage for Cochran's claim, which in turn resulted in Sonic's various damages.[21]

However, we reject Sonic's contention. Whether an employee may recover Texas workers' compensation benefits for an injury sustained out of state is dictated by the act—not the terms of the policy. See Tex. Lab.Code Ann. § 406.071. An employ-

---

21. For instance, Sonic asserts the TWCC's determination of coverage "came at a substantial cost to [Sonic]" and "If the Croix Parties had promptly informed [Sonic] that some other policy would have been required to show that coverage was clear in this fact situation without the requirement of extensive and expensive litigation, then [Sonic] could have obtained such other policy." Sonic also contends it became subject to the Alabama judgment because Cochran made the election of remedies after TMI disputed the Texas claim. Sonic further contends that it lost several opportunities to sell the company due to the Alabama judgment. Additionally, the election of remedies resulted in the TWCC's determination that Sonic, as Cochran's subclaimant, was barred from reimbursement for Texas benefits it voluntarily paid to Cochran.

er purchases a workers' compensation policy to obtain payment of benefits required by the act. *See* Tex. Lab.Code Ann. § 406.002 (Vernon 2006) (providing, subject to certain exceptions, employer may elect to obtain workers' compensation coverage and employer who so elects is subject to the act). Accordingly, we reject the suggestion that an agent is obligated to procure a workers' compensation policy that contains language clearly defining eligibility for benefits that can be ascertained by reviewing the statute.

█ Further, Sonic cites no authority holding that an agent who obtained a policy that actually covered the underlying claim nonetheless breached his duty because the insured incurred expenses or other damages resulting from the carrier's denial of coverage. It is axiomatic an insurance policy does not include an inherent guarantee that the carrier will never dispute coverage. Whether TMI would dispute a workers' compensation claim was beyond the Croix Parties' control once it procured the policy. Accordingly, the Croix Parties did not breach their duty to Sonic by failing to secure a different Texas workers' compensation policy.

**b. Alabama Workers' Compensation Policy**

To support its negligence claim, Sonic does not specifically mention the Croix Parties' failure to secure an Alabama workers' compensation policy. However, in its petition, Sonic generally asserted the Croix Parties were negligent by failing to secure proper workers' compensa-

tion coverage for employees who lived and worked out of state. Although Cochran was eligible to receive Texas workers' compensation benefits, he was also entitled to recover Alabama workers' compensation benefits. Apparently, Sonic claims it was required to pay these benefits pursuant to the Alabama judgment because it lacked Alabama workers' compensation insurance. To the extent Sonic complains the Croix Parties failed to secure an Alabama workers' compensation policy, the Croix Parties negated that they breached a duty.[22]

The Croix Parties' summary-judgment evidence established that Sonic did not request an Alabama workers' compensation policy. In its summary-judgment response and appellate brief, Sonic cites its February 10, 1994 letter advising Croix regarding the contract for the Alabama project at issue and the possibility of using Alabama residents. But, in response, Croix cautioned Sonic to obtain an Alabama policy if it employed Alabama residents, provided quotes for such a policy, and asked Sonic to inform him if it wished to purchase the policy. Despite this advice, Sonic never requested that Croix purchase such a policy. We note that the Croix Parties did not present any letter specifically advising Sonic of the need to obtain an Alabama policy when it purchased the Texas policy at issue. However, when initially placing the insurance, Croix advised Sonic of the need to purchase Alabama workers' compensation coverage, and the subsequent policies, includ-

---

**22.** As previously explained, the Croix Parties did obtain a policy containing an Other States Endorsement that would reimburse Sonic in certain instances for amounts it was required to pay under Alabama workers' compensation law. However, TMI denied coverage under this endorsement because it applied to temporary operations only, which by definition excluded Sonic's Alabama project at issue.

Sonic has not challenged the denial of coverage in this appeal. Instead, Sonic suggests the Croix Parties were required to obtain an Alabama workers' compensation policy on Sonic's behalf to cover its Alabama operations, including Cochran's Alabama claim, without regard to permanent or temporary status.

ing for the period at issue, were merely renewals of previous coverage.

Sonic also cites Harrivel's testimony that Sonic informed the Croix Parties it performed operations outside Texas using non-resident employees. Further, Sonic relies on an excerpt from the deposition of Randall Stanford, its chief financial officer. Stanford was asked whether he had been informed before Cochran's injury that an employee injured outside Texas would have legal recourse under the workers' compensation act of the other state. Stanford replied, "Nobody has ever specifically told me that if somebody is injured in any particular state, that any particular state would be the one that they file the claim in." Stanford was further asked to explain the steps he took to investigate Sonic's responsibilities and potential liabilities under the workers' compensation laws of other states in which it performed operations. Stanford responded,

I would have an insurance agent who would be told what we do, how we do it, where we do it, when we do it, and he would be-he would go out and get some insurance and come back and say, "Okay, here's your insurance," and we pay our money.

■ Apparently, Sonic seeks to impose a general duty on the Croix Parties to assess and obtain any necessary insurance coverage for out-of-state operations. However, "no legal duty arises on the part of an insurance agent to extend the insurance protection of his customer merely because the agent has knowledge of the need for additional insurance of that customer, especially in the absence of evidence of prior dealings where the agent customarily has taken care of his customer's needs without consulting him." *McCall v. Marshall*, 398 S.W.2d 106, 109 (1965); *Critchfield*, 151 S.W.3d at 230; *Pickens v. Tex. Farm Bureau Ins. Cos.,* 836 S.W.2d 803, 805 (Tex.App.–Amarillo 1992, no writ).

The evidence showed that the Croix Parties contacted Sonic each year regarding renewal of its policy. Thus, the Croix Parties did not customarily place Sonic's insurance without consultation. Sonic cites no summary-judgment evidence indicating existence of such a relationship. On this record, the Croix Parties had no duty to obtain an Alabama policy absent a request by Sonic.

Accordingly, the Croix Parties did not breach their duty to Sonic by failing to obtain an Alabama workers' compensation policy. *See Moore*, 966 S.W.2d at 692 (holding that agent did not breach where insured admitted he never requested a specific type of coverage and agent provided policy according to his understanding of insured's expectations); *McCall*, 398 S.W.2d at 108–09 (holding agent did not breach a duty by failing to extend insured auto-dealer's policy to cover new location, although agent knew of this location, where insured did not request extended coverage and there was no evidence of prior dealings where the agent customarily had handled customer's needs without consulting him).

In sum, the summary-judgment evidence established as a matter of law that the Croix Parties did not breach a duty to Sonic that will support a negligence cause of action, and Sonic has presented no evidence raising a genuine issue of material fact. Accordingly, the Croix Parties negated an element of Sonic's negligence cause of action.

## B. Gross Negligence

■ In its petition, Sonic sought to recover punitive damages based on its allegation of gross negligence. The Croix Parties moved for summary judgment on

the ground that the gross negligence claim is not viable because they were not negligent. Subject to an exception inapplicable in this case, a finding of ordinary negligence is prerequisite to a finding of gross negligence. *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 174 (Tex.App.–Houston [14th Dist.] 1994, writ denied); *see Sanders v. Herold*, 217 S.W.3d 11, 20 (Tex. App.–Houston [1st Dist.] 2006, no pet.). Accordingly, the Croix Parties also negated Sonic's gross-negligence cause of action.

## C. Violations of Chapter 541 and DTPA

Sonic contends the trial court improperly granted summary judgment on its causes of action against the Croix Parties for violations of Insurance Code Chapter 541 and the DTPA.

To support these claims, in its petition, Sonic recited the same list of alleged improper claims-handling practices and misrepresentations about coverage under the policy that it pleaded against TMI. In its summary-judgment response and on appeal, Sonic refers only to the Croix Parties' alleged misrepresentations—not any claims-handling practices. Therefore, we will address summary judgment on the Chapter 541 and DTPA causes of action only to the extent they were based on alleged misrepresentations.[23]

Sonic did not plead any specific misrepresentations purportedly made by the Croix Parties. The Croix Parties moved for summary judgment on the ground they did not make any misrepresentations that caused damages to Sonic. The Croix Parties presented the deposition of Harrivel who generally testified she was unaware that Croix ever lied to Sonic, made any false, misleading or deceptive statements about Sonic's coverage, or made any false statements of fact.

■ In its summary-judgment response and appellate brief, Sonic's discussion about its Chapter 541 and DTPA causes of action is rather scant. Sonic relies solely on two excerpts from Randall Stanford's deposition.

First, Stanford was asked whether Sonic attempted to ascertain if it complied with workers' compensation laws of other jurisdictions. Stanford replied, "[I]t is our understanding that the insurance agent is the one who is knowledgeable about this. If the insurance agent tells me I have coverage, then I believe him." Apparently, Sonic contends the Croix Parties misrepresented that the policy at issue provided Alabama workers' compensation coverage. However, this testimony regarding Sonic's general reliance on its agent to inform Sonic regarding the extent of existing coverage does not constitute evidence that Croix actually represented the policy provided Alabama workers' compensation coverage.

To the contrary, Harrivel testified she was unaware Croix ever represented that Sonic did not need to purchase an Alabama policy because the policy at issue would cover Alabama operations. In addition, Croix's letters show he advised Sonic to purchase an Alabama policy if it employed Alabama residents for operations in that state.[24] Finally, the information pages at

---

23. Sonic pleaded the "Defendants" committed these various violations of Chapter 541 and the DTPA. The claims-handling allegations seem directed at TMI, as insurer. Nonetheless, because Sonic does not challenge summary judgment in favor of the Croix Parties on Chapter 541 and DTPA causes of action to the extent they stemmed from claims-handling practices, we need only address the alleged misrepresentations.

24. As we have explained, the TWCC determined that, absent his election of remedies, Cochran would have been entitled to receive

the outset of the policy at issue and previous policies express that the workers' compensation portion applies to the "Workers' Compensation Law of ... TEXAS." Consequently, the Croix Parties conclusively proved they did not make any misrepresentations that the policy provided coverage for Alabama workers' compensation claims.

Second, Stanford was asked whether Sonic expected to be repaid by TMI or some other source when it made voluntary payments to Cochran. Stanford replied, "I just expected to get the money back. I'm not sure how we thought that was going to occur, but it was-we fully expected to get the money back as soon as this got resolved in some fashion." But, Stanford's general expectation is not evidence the Croix Parties represented Sonic would be reimbursed.

Therefore, the Croix Parties established they did not make any misrepresentations to Sonic. In response, Sonic failed to present evidence raising a genuine issue of material fact. Accordingly, the Croix Parties negated an element of Sonic's causes of action under Insurance Code Chapter 541 and the DPTA.

In sum, the Croix Parties negated an element of all Sonic's causes of action. Accordingly the trial court did not err by granting summary judgment in favor of the Croix Parties. We overrule Sonic's first issue.[25]

## V. CONCLUSION

We reverse the portions of the judgment ordering that Sonic take nothing on all its

contractual and extra-contractual causes of action against TMI to the extent they are based on TMI's denial of Cochran's claim for Texas workers' compensation benefits. We affirm the portions of the judgment ordering that Sonic take nothing on all its contractual and extra-contractual causes of action to the extent they are not based on TMI's denial of the Texas workers' compensation claim. We affirm the summary judgment on Sonic's request for declaratory relief. We affirm the judgment in favor of the Croix Parties.

Texas workers' compensation benefits although he was an Alabama resident injured while working in Alabama. Therefore, the Croix Parties actually understated the extent to which the Texas policy at issue covered employees injured out of state. Nevertheless, Sonic apparently complains that the Croix Parties misrepresented that the policy provided coverage for Alabama workers' compensation claims.

25. Based on our disposition of Sonic's first issue, we need not consider its second issue, contending alternatively that the trial court improperly granted summary judgment on the Croix Parties' ground that all causes of action were precluded by *Fodge*.