**Reverse and Remand and Opinion Filed September 14, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01188-CV

**HENRY S. MILLER COMMERCIAL COMPANY,**
**Appellant and Cross-Appellee**
**V.**
**NEWSOM, TERRY & NEWSOM, L.L.P. AND STEVEN K. TERRY,**
**Appellees and Cross-Appellants**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 09-1306**

## MEMORANDUM OPINION

Before Justices Bridges, Evans, and O'Neill[1]
Opinion by Justice Bridges

This is a suit for attorney malpractice. In a previous lawsuit, a jury found appellant/cross-appellee Henry S. Miller Commercial Company ("HSM") liable for fraud. Judgment was rendered against HSM for $8.9 million. In this case, HSM sued the lawyers who represented it in the 2008 trial, appellees/cross-appellants Newsom, Terry & Newsom, L.L.P. and Steven K. Terry ("Lawyers"). The jury found $4,636,088 in damages, caused 50% by the Lawyers' negligence. But because another defendant had already settled with HSM for $6 million, the trial court applied a settlement credit and rendered a take-nothing judgment. Both parties now challenge the trial court's judgment.

---

[1] The Hon. Michael J. O'Neill, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

HSM asserts five issues; the Lawyers in their cross appeal assert two. We sustain HSM's fifth issue because we conclude that the trial court erred by directing a verdict on HSM's claim for gross negligence. We also conclude the trial court did not err by rejecting the Lawyers' argument that HSM's agreement with its judgment creditors was an illegal and void assignment that barred recovery on HSM's claim for legal malpractice. We therefore overrule the Lawyers' second cross-issue. Because of our rulings on these issues, we do not reach the parties' remaining issues regarding submission of the parties' comparative responsibility to the jury, the trial court's reapportionment of responsibility, postjudgment interest, and the amount of a settlement credit. We reverse the trial court's judgment and remand the cause for new trial. Because the issues are settled, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

HSM and its former employee Steven Defterios were sued by a group of commercial property owners for fraud relating to several unsuccessful real estate deals (the "Underlying Lawsuit"). James Flaven, the prospective buyer put forward by HSM and Defterios, held himself out as the beneficiary of a large trust fund. In fact, Flaven was a truck driver with no trust fund, and none of the deals ever closed. The properties were sold at a loss, and the prospective sellers sued HSM and Defterios, but not Flaven. The Lawyers represented HSM and Defterios in the Underlying Lawsuit. Defterios's employment with HSM ended while the Underlying Lawsuit was pending, about a year before the case proceeded to a jury trial. The trial court rendered judgment on the jury's verdict against HSM and Defterios. We modified and affirmed the trial court's judgment. *Defterios v. Dallas Bayou Bend, Ltd.*, 350 S.W.3d 659 (Tex. App.—Dallas 2011, pet. denied).

After the verdict in the Underlying Lawsuit, HSM's insurance carrier Diamond State Insurance Company denied coverage. HSM and Defterios promptly filed this suit against

Diamond State and the Lawyers. HSM's allegations of malpractice against the Lawyers were based on:

- the Lawyers' failure to designate Flaven as a responsible third party;

- the Lawyers' stipulation that HSM was responsible for Defterios's conduct;

- the Lawyers' failure to offer expert testimony on HSM's behalf, especially as to damages, and

- the Lawyers' failure to advise HSM about, or obtain a waiver of, the potential conflict between Defterios and HSM.

After HSM filed this suit, the judgment creditors in the Underlying Lawsuit filed an involuntary petition in bankruptcy against HSM. A reorganization plan was approved by the bankruptcy court in July 2010. Under the plan, a portion of HSM's claims against the Lawyers and Diamond State was assigned to the judgment creditors.

In this suit, the trial court rendered a partial summary judgment against Diamond State for $1,000,000 plus prejudgment interest and attorney's fees. Diamond State and HSM settled before trial for $6 million. Defterios and HSM nonsuited their claims against Diamond State. Immediately before trial, Defterios nonsuited all of his claims against the Lawyers and was no longer a party to the suit.

The case proceeded to trial on HSM's claims against the Lawyers. The jury found that the negligence of the Lawyers, HSM, and Defterios, but not Diamond State, was a proximate cause of HSM's injury. The jury assigned 50% responsibility to the Lawyers and 10% to HSM. The remaining 40% was assigned to Defterios, 20% in the underlying transaction and 20% in the Underlying Lawsuit. The jury awarded $4,636,088 as the "amount, if any, by which the judgment actually rendered in the Underlying Lawsuit exceeds the judgment that would have been rendered but for the negligence you have found" on the part of the Lawyers.

–3–

By agreement of the parties, after the jury verdict, the trial court heard evidence and made findings regarding attorney's fees. The trial court then rendered its final judgment. In the judgment, the trial court disregarded the jury's findings regarding Defterios, applied the 10% responsibility found by the jury as to HSM, applied the $6 million settlement credit reflecting HSM's settlement with Diamond State, and concluded the settlement credit exceeded the amount of HSM's recoverable damages. The judgment therefore provided that HSM should take nothing on its claims.

The trial court denied the Lawyers' motion to modify the judgment and HSM's motion for new trial. This appeal followed.

## DISCUSSION

### A. ILLEGALITY

In their second cross-issue, the Lawyers contend that HSM's agreement with its judgment creditors is an illegal and void assignment that bars recovery on HSM's legal malpractice claim. This is an issue of law we review de novo. *See, e.g., Barber v. Colo. Indep. Sch. Dist.*, 901 S.W.2d 447, 450 (Tex. 1995) (questions of law are reviewed de novo). If HSM's claim is barred as a matter of law, then we need not address any other issue.

After the judgment was entered in the underlying lawsuit, HSM entered into agreements with the judgment creditors to avoid execution on the judgment. This included a plan of reorganization and a litigation agreement. The Lawyers allege that these agreements assigned HSM's proceeds of recovery in this lawsuit to the judgment creditors "and realigned the judgment creditors' attorney to not only help but control the litigation in the legal malpractice case." The Lawyers conclude that these agreements constituted an illegal assignment under Texas law.

–4–

The supreme court has "disapproved voluntary assignments of legal malpractice claims that necessitate a duplicitous change in the positions taken by the parties in antecedent litigation," that is, where a party adopts a former adversary's position to pursue a claim for legal malpractice against the former adversary's lawyer. *See Mallios v. Baker*, 11 S.W.3d 157, 164 (Tex. 2000) (Hecht, J., concurring). In *Tate v. Goins, Underkofler, Crawford & Langdon*, 24 S.W.3d 627, 629 (Tex. App.—Dallas 2000, pet. denied), we considered whether a client's assignment of a legal malpractice claim to a former adversary was invalid in light of *Mallios*. In that case, Tate hired the appellee law firm ("Goins") to file a collection suit against the SIDCO corporation. *Id.* at 630. Soon after the suit was filed in Tarrant County, SIDCO filed suit against Tate in Bexar County. *Id.* Goins represented Tate in the Bexar County suit as well, but did not file an answer on Tate's behalf. SIDCO obtained a default judgment against Tate. *Id.* Tate and SIDCO then entered into a settlement agreement under which SIDCO agreed not to execute on the judgment in exchange for Tate's agreement to assign a portion of the proceeds of his malpractice suit against Goins to SIDCO. *Id.* at 630–31. Tate then filed suit against Goins for legal malpractice. *Id.* at 631. Goins moved for summary judgment, alleging among other grounds that Tate's assignment of his legal malpractice claim to SIDCO violated public policy. The trial court granted Goins's motion. *Id.* We reversed the trial court's judgment. *Id.* at 637. We concluded that Tate's assignment of his malpractice cause of action against Goins was against public policy. *Id.* at 634. But we also concluded that Tate was correct in arguing that his "right to bring the legal malpractice claim in his own name would not be affected by any invalid assignment of his malpractice claim to SIDCO." *Id.* We relied on the supreme court's opinion in *Mallios*, explaining, "[i]n *Mallios*, the Texas Supreme Court held that when there is a purported partial assignment of a legal malpractice claim, the plaintiff's right to bring his own

cause of action for malpractice is not vitiated by the invalid assignment." *Tate*, 24 S.W.3d at 634.

The Lawyers distinguish *Tate* on the ground that it was an appeal of a summary judgment rather than an appeal of a judgment rendered after a jury trial. They contend there is no remedy for an illegal assignment once trial has occurred; that "[u]ndoing or merely invalidating the assignment is an exercise in futility after the legal malpractice claim is prosecuted to trial and a jury verdict rendered" because the judgment creditor has "controlled the litigation and strategy decisions per the agreement." They rely on a Connecticut case, tried before a jury, to support their argument. *See Gurski v. Rosenblum & Filan, LLC*, 885 A.2d 163, 178 (Conn. 2005). The Connecticut supreme court not only invalidated the assignment but also reversed the trial court's judgment with instructions to render judgment for the law firm. *Id.*

But neither *Tate* nor *Mallios* imposed such a limitation on a plaintiff's right to assert its own malpractice claim against its lawyers. *See Mallios*, 111 S.W.3d at 159; *Tate*, 24 S.W.3d at 634. Here, HSM asserted its own malpractice claim against the Lawyers in its own name. It pursued its own claim through trial and judgment. Under these circumstances, HSM's right "to bring [its] own cause of action for malpractice is not vitiated" by the assignment to its judgment creditors. *See Tate*, 24 S.W.3d at 634. We overrule the Lawyers' second cross-issue.

## B. GROSS NEGLIGENCE

HSM sought exemplary damages against the Lawyers, alleging gross negligence. In its fifth issue, HSM contends that the trial court erred by granting a directed verdict for the Lawyers on this claim. A client who establishes the elements of its legal malpractice claim[2] may also

---

[2] The elements of a legal malpractice claim are not in dispute. Under Texas law, a plaintiff alleging legal malpractice must establish four elements: (1) that the defendant attorney owed the plaintiff a duty; (2) that the attorney breached that duty; (3) that the breach was the proximate cause of the plaintiff's injury; and (4) that damages occurred. *Gunn v. Minton*, 133 S.Ct. 1059, 1065 (2013) (citing *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004)). A litigation attorney's negligence causes damage to a client if the result the client would have obtained with competent counsel is more favorable to the client than the result actually obtained. *See Kelley & Witherspoon, LLP v. Hooper*, 401 S.W.3d 841, 847 (Tex. App.—Dallas 2013, no pet.). The plaintiff must prove that it would have obtained a more favorable result but for its

recover exemplary damages upon proof of the attorney's gross negligence. *See, e.g., Rhodes v. Batilla*, 848 S.W.2d 833, 843 (Tex. App.—Houston [14th Dist.] 1993, writ denied). The trial court, however, granted the Lawyers' motion for directed verdict on this issue:

> THE COURT: I think I could envision a case involving legal malpractice in which gross negligence might be in play. I don't think this is it. I don't—I don't find that there is any more than a scintilla of evidence in the record, particularly on the subjective prong.
>
> I think we have to recognize that some judgment calls were made by attorneys dealing with a very, very bad set of facts. There is a legitimate difference of opinion as to whether any of those decisions caused things to turn out any worse than they would have anyway. I think that probably a couple of them very possibly did.
>
> But I'm not—I'm just not satisfied that this is a proper case for gross negligence or exemplary damages. So that Motion for Directed Verdict is sustained as well.

In reviewing the grant or denial of a directed verdict we employ the standard for assessing the legal sufficiency of the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). Because the standard of proof of gross negligence is elevated, the standard of appellate review is likewise elevated. *Id.* at 817. Therefore, we conduct a legal sufficiency review under the "clear and convincing evidence" standard, defined as the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). We look at all of the evidence, in the light most favorable to the trial court's ruling:

> [L]ooking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.

---

attorney's negligence. *See id.* Legal malpractice damages "are the difference between the result obtained for the client and the result that would have been obtained by competent counsel." *Elizondo v. Krist*, 415 S.W.3d 259, 263 (Tex. 2013).

> This does not mean that a court must disregard *all* evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.
>
> If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient.

*In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *see also Diamond Shamrock Ref. Co. v. Hall*, 168 S.W.3d 164, 170 (Tex. 2005) (applying standard from *In re J.F.C.*).

Gross negligence is defined by statute:

> (11) "Gross negligence" means an act or omission:
>
> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
>
> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11) (West Supp. 2015).

Gross negligence has both an objective and a subjective component. *Reeder v. Wood Cty. Energy, LLC*, 395 S.W.3d 789, 796 (Tex. 2012). In examining proof of the subjective component, courts focus on the defendant's state of mind, examining whether the defendant knew about the peril caused by his conduct but acted in a way that demonstrates he did not care about the consequences to others. *Id.* Under the objective element, "extreme risk" is not a remote possibility or even a high probability of minor harm, but rather the likelihood of the plaintiff's serious injury. *U-Haul Int'l, Inc.*, 380 S.W.3d at 137.

HSM alleges four acts of gross negligence by the Lawyers in the Underlying Lawsuit: (1) failing to designate the "con man," James Flaven, as a responsible third party; (2) stipulating,

after the evidence was closed and the parties had rested, that HSM was responsible for Defterios's negligence; (3) failing to offer expert testimony on HSM's behalf, especially as to damages;[3] and (4) failure to advise HSM about, or obtain a waiver of, the potential conflict between Defterios and HSM.

HSM's second and fourth complaints are based on the Lawyers' assumption that HSM had no defense to the Underlying Lawsuit if the underlying plaintiffs proved Defterios lied. Terry testified that as he prepared the case he "felt like the evidence was indicating [Defterios] did commit fraud, yes." The Lawyers' assumption that HSM was liable for Defterios's fraud was based on a statutory provision that real estate brokers are responsible for the conduct of their salespersons. *See* TEX. OCC. CODE ANN. § 1101.803 (West 2012[4] & Supp. 2015[5]). Because they believed HSM could not avoid liability to the underlying plaintiffs by blaming Defterios, the Lawyers saw no conflict. Both HSM and the Lawyers offered expert testimony at trial to support their interpretations of this statutory provision. HSM's expert opined that the provision did not apply to the opposing party in a real estate transaction. The Lawyers' expert opined that it did. Terry also testified that the statute applied and that his decisions regarding HSM's liability for Defterios's conduct were based on the statute. On this record, no reasonable factfinder could form a firm belief or conviction that in making decisions based on their interpretation of the statute, the Lawyers had "actual, subjective awareness of the risk involved, but nevertheless

---

[3] HSM alleges the failure to properly "designate and scope" an expert witness to address damages also constituted gross negligence, but the parties do not address the issue in detail or explain how the record provides clear and convincing evidence of the objective and subjective components of gross negligence on this point. We therefore do not address this contention further.

[4] This statutory section, part of The Real Estate License Act, provided, "A licensed broker is liable to the commission, the public, and the broker's clients for any conduct engaged in under this chapter by the broker or by a salesperson associated with or acting for the broker." The applicability of this statute was hotly contested at trial. HSM's position was that the statute did not apply because Defterios's alleged misrepresentations were not made to "the commission, the public, [or] the broker's clients," but to the plaintiffs in the Underlying Lawsuit who were the opposing parties in a transaction. The Lawyers, in turn, relied on the statute to argue that as a matter of law HSM was liable for all of Defterios's actions. In the jury charge, the trial court explained it had "concluded that reasonable attorneys could differ in their opinions as to whether this statute in fact applied to the Underlying Lawsuit." The trial court instructed the jury that "[y]ou need not decide whether this section applied in the Underlying Lawsuit. Instead, you are to decide whether it was negligence on the part of [the Lawyers] to assume that it applied and to conduct the defense of the Underlying Lawsuit in accordance with that assumption."

[5] The statute was amended in 2015 to replace the term "salesperson" with "sales agent." *See* Act of May 26, 2015, 84th Leg., R.S., ch. 1158, § 89, 2015 Tex. Gen. Laws 3896, 3921 (codified at Tex. Occ. Code § 1101.803). This amendment was effective on January 1, 2016, after the verdict and judgment in this case. *Id.*

proceed[ed] with conscious indifference" to HSM's rights. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11)(B). The trial court did not err in granting a directed verdict on this point.

We reach a different conclusion, however, regarding the failure to designate Flaven as a responsible third party. If indeed HSM had no defense to the Underlying Lawsuit because it was liable as a matter of law for Defterios's conduct, then the only avenue for reducing the amount of a judgment against HSM (other than attacking the dollar amount of damages claimed) was by reducing HSM's proportionate responsibility. As the plaintiffs' lawyer from the Underlying Litigation testified, "the value of my lawsuit went down if they named [Flaven] as a responsible third party." But the Lawyers foreclosed this possibility by their failure to designate Flaven until after the deadline for doing so had passed.[6]

The Lawyers contend that if they had attempted to find and designate Flaven, they would have proved the underlying plaintiffs' case. But no such proof was required. The trial court has little discretion regarding a timely-filed motion to designate a responsible third party. The court "shall grant leave" to designate unless the opposing party files an objection and establishes that the designating party's pleadings are inadequate. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(f), (g) (West 2015); *Challenger Gaming Solutions, Inc. v. Earp*, 402 S.W.3d 290, 293 (Tex. App.—Dallas 2013, no pet.). As we have explained, "[t]he pleading requirements for designating a responsible third party at the outset of a case are not stringent." *In re Greyhound Lines, Inc.*, No. 05-13-01646-CV, 2014 WL 1022329, at *2 (Tex. App.—Dallas Feb. 21, 2014, orig. proceeding) (mem. op.). Only notice pleading under the Texas Rules of Civil Procedure is required. *Id.*

---

[6] The record reflects that the motion was filed on September 26, 2008, less than sixty days before the October 20, 2008 trial date. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(a) (motion to designate responsible third party must be filed on or before 60th day before trial date unless court finds good cause to allow later filing).

–10–

HSM was not required to concede liability in order to designate Flaven. It could have maintained there was no fraud in the underlying transaction, but pleaded in the alternative that if there was fraud, it was only on Flaven's part, not HSM's. *See* TEX. R. CIV. P. 48 ("A party may set forth two or more statements of a claim or defense alternatively or hypothetically . . . ."). Neither was it necessary to serve Flaven, join him in the lawsuit, or even determine his whereabouts in order to designate him as a responsible third party. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 868–69 (Tex. 2009) ("Thus, a defendant may designate a responsible third party even though that party possesses a defense to liability, or cannot be formally joined as a defendant, or both."). The Lawyers took precisely this position in their untimely designation of Flaven, arguing in the alternative that plaintiffs' damages were a result of false information provided by Flaven.

The Lawyers also argue that if they had designated Flaven, the plaintiffs in the Underlying Lawsuit would have moved to strike the designation, requiring HSM to prove the plaintiffs' case that there was fraud in the underlying transaction. The only statutory ground for a motion to strike is that "there is *no* evidence that the designated person is responsible for *any portion* of the claimant's alleged injury or damage." TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(*l*) (emphasis added); *see In re Brokers Logistics, Ltd.*, 320 S.W.3d 402, 407 (Tex. App.—El Paso 2010, orig. proceeding) (statute "articulates a single ground for striking a designation of a responsible third party"). The trial court "shall" grant a motion to strike a responsible third party made after adequate time for discovery "unless a defendant produces sufficient evidence to raise a genuine issue of fact regarding the designated person's responsibility for the claimant's injury or damage." TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(*l*). The underlying plaintiffs brought suit when Flaven did not purchase their properties as he had agreed to do. There was ample evidence of the proposed transaction, its failure, and

–11–

Flaven's identity as the defaulting buyer. The Lawyers could have relied on this evidence in arguing that Flaven was responsible for at least some of the damages from the failure to close the transactions even in the absence of any fraud by HSM or Defterios. There was more than a scintilla of evidence that Flaven was responsible for at least a portion of the underlying plaintiffs' damages. *See In re Brokers Logistics, Ltd.*, 320 S.W.3d at 406–07 (discussing standard of proof for motion to strike designation of responsible third party).

Further, the record establishes that the Lawyers had knowledge of the extreme risk involved. More than a year before the underlying trial, the Lawyers prepared disclosures on HSM's behalf naming Flaven as a responsible third party, but never sought to designate him until after the deadline for doing so. In a 2007 email to Diamond State, Terry stated, "It appears that Flaven was a con man from the start." Terry also informed Cheryl Lanier of Diamond State that "Mr. Flaven is the principal actor in the claim. He was the customer of the insured and the buyer under the contracts in question. It is his misrepresentation to the insured that is the subject matter of the suit."[7] Terry's July 2008 status report explained that Defterios denied making any representation that he had personally verified the truth of Flaven's statements, but "[b]ased upon the deposition of the two principals of [the plaintiff] and the third party broker dealing with Mr. Defterios in this matter, I am not confident that the jury will believe he did not make the statements." Terry testified that HSM was "faced with a $20 million or a $30 million verdict." His pretrial case assessment to Diamond State showed the "Highest Reasonable Exposure Amount" to be $20,450,000. The assessment reflected that the plaintiffs' expert prepared a report "in which he states his opinion that the Plaintiffs' damages are $20,447,905.00." The last settlement demand was $16,000,000. Diamond State's policy limits of $1,000,000 were far below these estimates, leaving significant exposure for HSM.

---

[7] These statements were made in an email dated December 18, 2007, approximately ten months before the trial in October 2008.

Terry testified he understood that it would have been in HSM's best interest to designate other responsible parties to deflect liability from HSM if there was a basis for doing so. But he admitted doing little to develop any evidence that Flaven bore responsibility for any of the underlying plaintiffs' damages; in fact, he testified his inaction was intentional. He testified, "I tried to contact Mr. Flaven with the contact information we had, unsuccessful in that. But I was not going to go out and find him and develop those facts which were contrary to my client's best interests." The underlying plaintiffs developed the evidence instead, locating Flaven's brother and deposing him to determine that Flaven was not the beneficiary of any trust fund.

Terry testified that the failure to designate Flaven had no impact on the outcome of the case. But as HSM's expert witness testified, the "whole rationale" for the Underlying Lawsuit was that misrepresentations were made about Flaven's ability to close the real estate transactions in question. The lawyer for the underlying plaintiffs testified that he was first approached by the underlying plaintiffs to file suit against Flaven, not HSM or Defterios. Terry reported to Diamond State that Flaven initiated the underlying transactions, contacting Defterios to ask if there were any large real estate packages available in the area in which to invest the millions from his (fictional) trust fund. Given this evidence, HSM's expert opined that Flaven "would be someone that the jury would very well consider to be the person most responsible, if not totally responsible, for what happened." And contrary to the Lawyers' contention, we have explained that permitting a case to proceed in the absence of a proper responsible third party does "potentially affect the outcome of the litigation." *See In re Greyhound Lines, Inc.*, 2014 WL 1022329, at *4 (internal quote omitted).

The Lawyers also contend that HSM's expert witness's testimony regarding gross negligence is no evidence because it was conclusory. HSM's expert testified he had formed the conclusion that the Lawyers acted with gross negligence "in two specific areas," including the

–13–

failure to timely file the responsible third party designation. But in addition to these conclusions, the expert testified at length regarding his opinion that "a reasonably prudent lawyer absolutely would have designated Mr. Flaven as a responsible third party and would have done it at a very early time," as we have just discussed. He addressed Terry's reasons for not making the designation and explained why those reasons did not change his opinions. Although Terry testified that the underlying plaintiffs were focusing on Defterios's representations, the expert testified that "what really matters is what the jury would focus on":

> And that is, they would be given an opportunity to decide who set all of this in motion, who conned almost everybody, who was the person that was most responsible for doing this. And it would have allowed them to make that determination, which was an opportunity that Henry S. Miller deserved to have in this case.

Further, the expert testified that a reasonably prudent lawyer would have filed the designation "much earlier," and, in his opinion, the result of the underlying litigation would have been different. In sum, the expert provided support, based on his review of the record and his expertise, for his ultimate conclusion that the Lawyers' failure to designate Flaven before the deadline constituted gross negligence.

As we have explained, the jury also heard testimony from Terry himself. In addition, the Lawyers' own expert witness testified about Terry's reasons for not designating Flaven until the deadline had passed, and offered his opinion that a reasonably prudent lawyer would have waited to designate Flaven as Terry did. The jury could have credited this testimony and found that the Lawyers' conduct was not grossly negligent. But the existence of controverting evidence is not the standard for determining whether a directed verdict was proper. Instead, we must determine whether a reasonable factfinder could form a firm belief or conviction that the Lawyers were grossly negligent in failing to designate Flaven as a responsible third party. *See U-Haul Int'l, Inc.*, 380 S.W.3d at 137. We conclude that the jury could have reached this conclusion based on

–14–

the evidence presented at trial. HSM offered clear and convincing evidence establishing the Lawyers' subjective and objective awareness of the extreme risks of their litigation strategy which exposed HSM to multi-million-dollar liability not only for Defterios's actions but also for Flaven's. The trial court erred by granting a directed verdict on HSM's gross negligence claim.

We cannot remand for new trial on the issue of punitive damages alone. *See Nowzaradan v. Ryans*, 347 S.W.3d 734, 739 (Tex. App.—Houston [14th Dist.] 2011, no pet.). A jury must decide the amount of punitive damages based on the totality of the evidence from the liability phase as well as the punitive damages stage. *See Nowzaradan*, 347 S.W.3d at 739 (quoting *Sw. Ref. Co. v. Bernal*, 22 S.W.3d 425, 433 (Tex. 2000)); *Williams v. LifeCare Hosps. of N. Tex., L.P.*, 207 S.W.3d 828, 832–34 (Tex. App.—Fort Worth 2006, no pet.) (issue of exemplary damages not separable from issues of ordinary negligence and compensatory damages). Because we reverse the trial court's directed verdict, we must remand the cause for a new trial on both liability and damages.

## CONCLUSION

We overrule the Lawyers' second cross-issue. We sustain HSM's fifth issue. Because of our disposition of these issues, we need not address the parties' remaining issues and cross-issue. We reverse the trial court's judgment and remand the cause for a new trial.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

141188F.P05

–15–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

HENRY S. MILLER COMMERCIAL
COMPANY, Appellant

No. 05-14-01188-CV          V.

NEWSOM, TERRY & NEWSOM, LLP,
and STEVEN K. TERRY, Appellees

On Appeal from the 101st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 09-1306.
Opinion delivered by Justice Bridges;
Justices Evans and O'Neill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for a new trial.

It is **ORDERED** that appellant Henry S. Miller Commercial Company recover its costs of this appeal from appellees Newsom, Terry & Newsom, LLP, and Steven K. Terry.

Judgment entered September 14, 2016.