**Younan NOWZARADAN, M.D., Appellant**

v.

**Shirley H. RYANS, Appellee.**

**No. 14–10–00381–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 26, 2011.

Rehearing En Banc Overruled June 28, 2011.

T. Marc Calvert, Houston, for appellant.

Tommy W. Gillaspie, Leslie C. Taylor, Houston, for appellee.

Panel consists of Justices SEYMORE, BOYCE, and CHRISTOPHER.

## OPINION

CHARLES W. SEYMORE, Justice.

In this interlocutory appeal, Younan Nowzaradan, M.D. contends the trial court erred by denying his motion to dismiss Shirley H. Ryans's gross-negligence claim because of her failure to serve a sufficient expert report as prescribed under Chapter 74 of the Civil Practice and Remedies Code—the Texas Medical Liability Act. Tex. Civ. Prac. & Rem.Code Ann. §§ 74.001–.507 (West 2011). We affirm.

### I. BACKGROUND

In October 2006, James Key, M.D. performed hip-replacement surgery on Ryans. Although Dr. Nowzaradan was present during the surgery, the parties dispute his level of participation. Following surgery, Dr. Nowzaradan allegedly supervised Ryans's rehabilitation. In July 2008, Ryans filed a medical-malpractice claim against Dr. Nowzaradan and others, claiming that their ordinary negligence in failing to respond properly to her prosthetic-hip dislocation caused her injuries. Contemporaneously, Ryans served Dr. Nowzaradan with an expert report. In September 2008, Ryans served a supplemental report in which her expert further discussed the applicable standard of care. There is no dispute in this appeal that these reports complied with the expert-report requirements of chapter 74.

On August 4, 2009, Ryans filed her third-amended petition in which she added a gross-negligence claim.[1] Dr. Nowzaradan filed a motion to dismiss Ryans's gross-negligence claim, arguing it was a separate cause of action which her expert

report did not address. The trial court denied the motion, and Dr. Nowzaradan filed this interlocutory appeal. See id. § 51.014(a)(9) (West 2008) (authorizing interlocutory appeal of denial of motion to dismiss for failure to serve expert report under chapter 74).

### II. ALLEGATION OF GROSS NEGLIGENCE IN HEALTH CARE LIABILITY SUIT

In his sole issue, Dr. Nowzaradan contends the trial court erred by denying his motion to dismiss because Ryans was required to serve timely a section 74.351 expert report supporting her gross-negligence claim.

### A. Relevant Law and Standard of Review

"In a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted." See id. § 74.351(a). A section 74.351 expert report must include a fair summary of the expert's opinions as of the date of the report regarding (1) the applicable standards of care, (2) the manner in which the physician's care failed to satisfy that standard, and (3) the causal relationship between the physician's failure and the injury, harm, or damages claimed. See id. § 74.351(r)(6). Generally, if the plaintiff fails to serve an expert report within the statutory deadline, the trial court must dismiss the claim with prejudice. See id. § 74.351(b).[2]

---

1. In her third-amended petition, Ryans added a section entitled "Defendants' Gross Neglect/ 'Conscious Indifference.'" We construe this section as adding only gross negligence because conscious indifference is merely an element of gross negligence.

2. If a claimant is deemed to have failed to serve a report because the report he served was deficient, the trial court may grant the claimant one thirty-day extension to cure the deficiency. Tex. Civ. Prac. & Rem.Code Ann. § 74.351(c). This subsection is not applicable in the present case.

■ We review a trial court's denial of a motion to dismiss under section 74.351 for abuse of discretion. *Group v. Vicento*, 164 S.W.3d 724, 727 (Tex.App. Houston [14th Dist] 2005, pet. denied). However, when resolution of an issue requires interpretation of a statute, we review under a *de novo* standard. *Mokkala v. Mead*, 178 S.W.3d 66, 70 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). In construing a statute, our objective is to determine and give effect to the legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000). If possible, we must ascertain that intent from the language the legislature selected and should not refer to extraneous matters for intent not expressed in the statute. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the words. *See St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997).

**B. Analysis**

The crux of Dr. Nowzaradan's argument is that gross negligence and ordinary negligence are separate causes of action, each requiring a section 74.351 report. He relies heavily on this court's opinion in *Olin Corp. v. Dyson*, 678 S.W.2d 650 (Tex.App.-Houston [14th Dist.] 1984), *rev'd on other grounds*, 692 S.W.2d 456 (1985). In *Dyson*, this court determined there was factually insufficient evidence to support the jury's gross-negligence finding. *Id.* at 659. Instead of remanding for a new trial on all issues, this court remanded only the gross negligence issue, concluding, "The issue of gross negligence is separable from the rest of the controversy, and a partial remand would not result in unfairness to the parties." *Id.* This court further explained, "[W]e believe negligence and gross negligence to *constitute two separable cause of actions* as gross negligence requires proof of the mental attitude of the defendant and ordinary negligence does not and the

means by which damages are assessed for each action is different." *Id.* (emphasis added).

At least two courts of appeals have concluded that *Olin* was overruled by *Transportation Insurance Co. v. Moriel*, 879 S.W.2d 10 (Tex.1994). *See Williams v. LifeCare Hosps. of N. Tex., L.P.*, 207 S.W.3d 828, 834–35 (Tex.App.-Fort Worth 2006, no pet.); *Prati v. New Prime, Inc.*, 949 S.W.2d 552, 557–58 (Tex.App.-Amarillo 1997, pet. denied). In *Moriel*, the supreme court determined that trials involving a claim for punitive damages should be bifurcated, whereby the jury first determines liability for actual and punitive damages and the amount of actual damages and then determines the amount of punitive damages. 879 S.W.2d at 30. In 1995, the legislature codified this holding. *See* Act of April 6, 1995 74th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 108, 112 (codified at Tex. Civ. Practice & Remedies Code Ann. § 41.009); *see also Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex.2008) (recognizing applicability of Chapter 41 of the Civil Practice and Remedies Code when gross negligence was asserted in medical-malpractice case). Later, the supreme court was asked to decide whether an appellate court erred by remanding only a gross-negligence allegation for a new trial. *Ford Motor Co. v. Miles*, 967 S.W.2d 377, 379 (Tex.1998). The majority did not reach the issue, but in a concurring opinion joined by two justices, Justice Gonzalez cited *Moriel* and opined that "[i]t would not be fair to have a new trial simply on the defendant's state of mind" because "negligence and gross negligence are not separable causes of action but are inextricably intertwined." *Id.* at 390 (Gonzalez, J., concurring).

■ Although our court has recognized the supreme court's bifurcation procedure

established in *Moriel*,[3] we have not specifically addressed whether *Olin* is binding authority in light of *Moriel*. In *Crown Central Petroleum Corp. v. Coastal Transport Co.*, we cited *Moriel* and ultimately remanded the case for a new trial pertaining only to the gross-negligence allegation. 38 S.W.3d 180, 191 (Tex.App.-Houston [14th Dist.] 2001), *rev'd on other grounds*, 136 S.W.3d 227 (Tex.2004).[4] However, we did not cite or consider that portion of *Moriel* concerning bifurcation of a trial. We are bound by prior opinions of this court *unless* there is a contrary decision by this court en banc or a higher court. *Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 630 (Tex. App.-Houston [14th Dist.] 2010, no pet.). We now determine whether *Olin* has been implicitly overruled by *Moriel* and other subsequent supreme court decisions.

■ In 2000, the supreme court held that in order to achieve proportionality between actual and punitive damage awards, "under *Moriel*, a jury must decide the amount of punitive damages based on the totality of the evidence from the liability phase as well as the punitive damages stage." *Sw. Ref. Co. v. Bernal*, 22 S.W.3d 425, 433 (Tex.2000). It would be impossible to give effect to this language and remand only for a new trial regarding punitive damages. Furthermore, excepting certain worker's compensation cases, it is well established that a finding of ordinary negligence is prerequisite to a finding of gross negligence. *Sonic Sys. Int'l, Inc. v. Croix*, 278 S.W.3d 377, 395 (Tex.App.-

Houston [14th Dist.] 2008, pet. denied). In fact, in 2005, the supreme court prescribed that a jury shall be instructed it "must unanimously find ... liability on at least one claim for actual damages that will support an award of exemplary damages" before such damages may be awarded. Tex.R. Civ. P. 226a(III); *cf.* Tex. Civ. Prac. & Rem.Code Ann. § 41.003(d) (West Supp. 2009) (providing jurors must be unanimous regarding liability for, and amount of, exemplary damages before such damages may be awarded); Tex.R. Civ. P. 292(b) (same). Construing these principles together, it is clear the same jury that determines liability and damages for ordinary negligence must also determine liability and damages for gross negligence. Accordingly, we conclude our opinion in *Olin* was implicitly overruled. Accordingly, "negligence and gross negligence are not separable causes of action but are inextricably intertwined." *Ford Motor Co. v. Miles*, 967 S.W.2d at 390 (Gonzalez, J., concurring).

■ Having concluded that ordinary negligence and gross negligence are not separate causes of action, we next determine whether gross negligence is a "health care liability claim" for which a section 74.351 report must be served. Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a); *see also Harris Methodist Fort Worth v. Ollie*, 270 S.W.3d 720, 729 (Tex.App.-Fort Worth 2008) ("In every claim that falls within the above definition of a health care liability claim, a claimant shall, not later than the

3. *See In re Jacobs*, 300 S.W.3d 35, 42 n. 4 (Tex.App.-Houston [14th Dist.] 2009, orig. proceeding); *Knox v. Taylor*, 992 S.W.2d 40, 65 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *Convalescent Servs., Inc. v. Schultz*, 921 S.W.2d 731, 739–40 (Tex.App.-Houston [14th Dist.] 1996, writ denied).

4. Dr. Nowzaradan argues that our court reaffirmed its opinion that negligence and gross negligence are separate claims in *Rosen v. National Hot Rod Association*—a case decided after *Moriel* was issued. No. 14–94–00775–CV, 1995 WL 755712, at *7 n. 1 (Tex.App.-Houston [14th Dist.] Dec. 21, 1995, writ denied) (not designated for publication) (citing *Dyson*, 678 S.W.2d at 659). However, *Rosen* has no precedential value because it was an unpublished opinion issued prior to January 1, 2003. *See* Tex.R.App. P. 47.7(b).

120th day after the date the claim was filed, serve on each party or the party's attorney one or more expert reports."). "Health care liability claim" is defined as "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care [or] health care ... which proximately results in injury to or death of a claimant[.]" *Id.* § 74.001(a)(13). The term "cause of action" refers to underlying facts "giving rise to one or more bases for suing." *See In re Jorden,* 249 S.W.3d 416, 421–22 (Tex. 2008) (orig. proceeding) (quoting Black's Law Dictionary 235 (8th ed. 2004)). In a claim of ordinary negligence based on medical malpractice, the essential elements are (1) a duty by the physician to act according to a certain standard, (2) a breach of the applicable standard of care, (3) an injury, and (4) a causal connection between the breach of care and the injury. *Wilson v. Korthauer,* 21 S.W.3d 573, 579 n. 3 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). In addition to recovering actual damages for the defendant's ordinary negligence, a plaintiff may recover punitive damages if he proves the defendant was grossly negligent.

■ "Gross negligence" means an act or omission:

(A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Tex. Civ. Prac. & Rem.Code Ann. § 41.001(11) (West 2008); *see also id.* § 74.001(a)(9) (" 'Gross negligence' has the meaning assigned by Section 41.001."). To establish gross negligence, "the act or omission complained of *must depart from the ordinary standard of care to such an extent that it creates an extreme degree of risk of harming others." Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue,* 271 S.W.3d 238, 248 (Tex.2008) (emphasis added).

■ In the medical-malpractice context, the standard of care is the action an ordinary physician would perform under the same or similar circumstances. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 880 (Tex.2001); *see also Benish v. Grottie,* 281 S.W.3d 184, 191 (Tex.App.-Fort Worth 2009, pet. denied) ("[T]he medical standard of care is an element of a plaintiff's medical negligence cause of action, setting the standard against which the factfinder measures the defendant's conduct."). Therefore, to prove gross negligence in a medical-malpractice suit, the plaintiff must first establish that the physician's act or omission fell below the standard of care an ordinary physician would have fulfilled under the same or similar circumstances. Then the plaintiff must prove the physician's act or omission departed from that standard *to such an extent* that the patient was subjected to an extreme degree of risk of harm. *See Hogue,* 271 S.W.3d at 248. The medical standard of care is the same for ordinary negligence and gross negligence, the difference being the extent to which the physician breached the standard.[5]

---

**5.** We recognize that gross negligence has been variously described as a "lower standard of care" than ordinary negligence. *Jackson v. Axelrad,* 221 S.W.3d 650, 655 (Tex.2007). However, this concept simply means it is more difficult to establish that a defendant acted with gross negligence—not that gross negligence is a separate cause of action involving a unique standard of care. To be grossly negligent, the defendant must breach the ordinary standard of care to a greater degree.

Additionally, the causation element is the same for ordinary negligence and gross negligence. A plaintiff is not required to prove that the defendant's gross negligence actually caused a serious injury; rather, the plaintiff must only prove that the act or omission subjected the patient to an extreme degree of risk of harm. *See* Tex. Civ. Prac. & Rem.Code Ann. § 41.001(11). Therefore, the only causation element a plaintiff alleging gross negligence must prove is that the defendant's breach of the *ordinary standard* of care proximately caused actual damages. *See Croix*, 278 S.W.3d at 395 (recognizing finding of ordinary negligence is prerequisite to finding of gross negligence).

Moreover, we note that a gross-negligence finding is relevant only to an assessment of punitive damages, *Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 721 (Tex.App.-San Antonio 1994, writ denied), and punitive damages are not available until a plaintiff proves his entitlement to actual damages. *See* Tex. Civ. Prac. & Rem.Code Ann. § 41.004(a) (West 2008) ("[E]xemplary damages may be awarded only if damages other than nominal damages are awarded."); *AVCO Corp., Textron Lycoming Reciprocating Engine Div. of AVCO Corp. v. Interstate Sw., Ltd.*, 251 S.W.3d 632, 662 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (same).

Succinctly, an amended pleading that includes allegations of gross negligence does not constitute a "cause of action against a health care provider or physician for treatment, lack of treatment, of other claimed departure from accepted standards of medical care ... which proximately results in injury to or death of a claimant." *Id.* § 74.001(a)(13). Instead, allegations of gross negligence support a claim for punitive damages against a physician based on *the extent* to which the ordinary standard of care has been breached. *But see Heriberto Sedeno, P.A. v. Mijares*, 333 S.W.3d 815, 821–22, 825 (Tex. App.-Houston [1st Dist.] 2010, no pet.) (determining ordinary and gross-negligence claims are both health care liability claims under section 74.351 *without* addressing the intertwined relationship between the claims). Stated differently, gross negligence necessarily amounts to a heightened degree of ordinary negligence. *See Newman*, 891 S.W.2d at 721 ("[N]o exact line can be drawn between negligence and gross negligence. The difference between the two forms of negligence is one of degree rather than kind." (citation omitted)); *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 174 (Tex.App.-Houston [14th Dist.] 1994, writ denied) ("With ordinary negligence, the actor fails to use ordinary care. Gross negligence, on the other hand, involves a more extreme departure from ordinary care." (citation omitted)).

Our conclusion is consistent with the language of section 74.351, which requires that an expert opine regarding *the manner* in which the physician breach the applicable standard of care and the causal relationship between the breach and the plaintiff's injury, not *the extent* of the breach. Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(6).[6] Analogously, our sister

---

6. We recognize that an expert opinion may ultimately be required to prove the extent to which a physician's negligence departed from the standard of care. *See, e.g., Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 365 (Tex.1987) (concluding expert may testify that defendant's conduct constituted gross negligence); *Pack v. Crossroads, Inc.*, 53 S.W.3d 492, 500 (Tex.App.-Fort Worth 2001, pet. denied) ("[E]xpert testimony is required to prove negligence or gross negligence unless the form or mode of treatment is a matter of common knowledge, or the matter. is within the experience of a layperson."). Nevertheless, if we interpreted section 74.351(r)(6) to require an opinion regarding *the extent* of the defendant's breach and degree of risk involved, we would judicially amend the statute to add a requirement neither expressly nor implicitly contained in the language. *See Lee*

courts of appeals have held that a plaintiff is not required to provide an expert opinion supporting the wilful and wanton element in cases involving emergency medical care because such proof relates to the degree a physician or health care provider deviated from the standard of care, *i.e.,* the standard of proof.[7] *See Benish,* 281 S.W.3d at 192; *Baylor Med. Ctr. at Waxahachie, Baylor Health Care Sys. v. Wallace,* 278 S.W.3d 552, 556 (Tex.App.-Dallas 2009, no pet.); *Bosch v. Wilbarger Gen. Hosp.,* 223 S.W.3d 460, 464 (Tex.App.-Amarillo 2006, pet. denied).

We note that health care liability plaintiffs are required to serve an expert report when they assert a claim for malicious credentialing, *Garland Community Hospital v. Rose,* 156 S.W.3d 541, 542 (Tex.2004), an element of which is that the defendant acted with malice in breaching the standard of care for credentialing. *See* Tex. Occ.Code Ann. § 160.010(b) (West Supp. 2009); *see also Romero v. KPH Consol., Inc.,* 166 S.W.3d 212, 225 (Tex. 2005); *Moreno v. Quintana,* 324 S.W.3d 124, 135 (Tex.App.-El Paso 2010, pet. denied).[8] In *Rose,* the court also held, "When a plaintiff's credentialing complaint centers on the quality of the doctor's treatment, as it does here, the hospital's alleged acts or omissions in credentialing are *inextricably intertwined* with the patient's medical treatment and the hospital's provision of health care.... Indeed, without negligent treatment, a negligent credentialing claim could not exist." *Rose,* 156 S.W.3d at 546 (emphasis added).

We mention *Rose* because we have concluded that a gross-negligence claim is inextricably intertwined with, but nonexistent without, a claim based on ordinary negligence and is not a claim for which an expert report is required under section 74.351. However, the difference between allegations of malicious credentialing and allegations of gross negligence renders our holding congruent with *Rose.* As previously noted, proof of gross negligence to support a claim for punitive damages pertains to *the extent* to which a defendant breached the ordinary standard of care. Contrarily, even if malicious credentialing is dependent on and intertwined with the physician's negligent treatment, it is a separate cause of action for compensatory damages involving a unique standard of care—whether the defendant hospital evaluated a physician in a reasonably prudent manner. *Id.* Thus, *Rose* is distinguishable.

Finally, we address Dr. Nowzaradan's arguments that a claim for gross negligence is particularly burdensome and expensive for physicians because a plaintiff is afforded the right to pursue discovery related to the physician's net worth, the physician may not be covered by insurance, and the physician is subjected to scrutiny by the Texas Medical Board or other entities. In light of these possible repercussions, Dr. Nowzaradan argues that allowing claimants to pursue gross-negligence claims without the burden of an expert report, contravenes the purpose of the Texas Medical Liability Act to limit the negative effects of medical-malpractice lawsuits by expeditiously eliminating frivolous health care liability claims. *See Sam-*

---

*v. City of Houston,* 807 S.W.2d 290, 295 (Tex. 1991) ("A court may not judicially amend a statute and add words which are not implicitly contained in the language of the statute.").

7. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.153.

8. "Malice" is even more difficult to prove then "conscious indifference" because it requires proof of "a *specific intent* by the defendant to cause substantial injury or harm to the claimant." Tex. Civ. Prac. & Rem.Code Ann. § 41.001(7) (emphasis added); *Romero,* 166 S.W.3d at 225.

*lowski v. Wooten,* 332 S.W.3d 404, 410 (Tex.2011).

These considerations do not justify a conclusion that gross negligence constitutes a separate health care liability claim requiring a timely served expert report. The complimenting purpose of the Texas Medical Liability Act is to preserve health care liability claims with potential merit. *Id.* When a plaintiff's expert report provides a fair summary of the applicable standard of care, the manner in which the physician breached the standard, and the causal connection between the breach and a plaintiff's injuries, the plaintiff has established the potential merit of his claim for ordinary negligence. The plaintiff's gross-negligence claim merely involves a heightened degree of the same negligence. Additionally, we note that legitimate concerns surrounding net-worth discovery and related issues can be effectively addressed through the trial court's discretion to supervise and establish limits on such discovery. *See In re Jacobs,* 300 S.W.3d 35, 47 (Tex.App.-Houston [14th Dist.] 2009, orig. proceeding); *see also id.* at 52 (Sullivan, J., concurring) ("Trial courts have the necessary management tools to control the sequence, timing, and scope of discovery to minimize burden, maximize efficiency, and protect privacy rights."). Accordingly, we overrule Dr. Nowzaradan's sole issue and affirm the trial court's order denying Dr. Nowzaradan's motion to dismiss.