

# NUMBER 13-22-00241-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DOROTHY SANDS, INDIVIDUALLY AND
AS REPRESENTATIVE OF THE ESTATE
OF CECILIA STANFORD, DECEASED,
AND JULIE STANFORD,                                                    Appellants,

## v.

AUTOZONE PARTS, INC.,                                                    Appellee.

**On appeal from the County Court at Law No. 4
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Justices Benavides, Tijerina, and Peña
Memorandum Opinion by Justice Benavides**

This is an appeal from a summary judgment granted in favor of appellee AutoZone

Parts, Inc. (AutoZone) on negligent undertaking and gross negligence claims brought by

appellants, Dorothy Sands, in her individual capacity and as representative of the estate of Cecilia Stanford, deceased, and Julie Stanford (who we will collectively refer to as "Sands"). By two issues, which we analyze as one, Sands contends that the trial court erred in granting AutoZone's motion for summary judgment because there exists a genuine issue of material fact as to each challenged element of her claims.[1] We affirm.

## I. BACKGROUND

AutoZone is a retail chain that sells automotive parts and accessories. AutoZone also provides customers with a complimentary diagnostic service. Using an electronic scanner that plugs into a port and communicates with a vehicle's onboard computer, AutoZone advertises its "Fix Finder" service as an easy way "to troubleshoot why your Check Engine Light is on." AutoZone compares the results of the diagnostic test with "an extensive database of repair solutions from ASE certified mechanics to help you find the most likely fix." Each customer receives a "FREE, easy-to-read MYZONE HEALTH REPORT, which includes relevant codes, and details the action that needs to be taken," including suggested repair parts that can be purchased through AutoZone. If the diagnostic test reveals a problem with the vehicle that cannot be readily identified or repaired by the customer, then it is AutoZone's policy to refer the customer to a qualified mechanic.

On the evening of October 23, 2017, Cecilia Stanford took her vehicle to a local

---

[1] In the "Issues Presented" section of her brief, Sands lists a third issue: "Whether the trial court erred in implicitly denying [Sands]'s Motion for Reconsideration." Sands did not address this issue in the argument section of her brief and thus waived the issue. *See* TEX. R. APP. P. 38.1(i); *Hernandez v. Hernandez*, 318 S.W.3d 464, 466 (Tex. App.—El Paso 2010, no pet.) ("When, as here, the appellate issues are unsupported by argument or lack citation to the record or legal authority, nothing is presented for review." (citing *Republic Underwriters Ins. v. Mex–Tex, Inc.*, 150 S.W.3d 423, 427 (Tex. 2004)).

AutoZone because her vehicle's check-engine light was on. After conducting a free diagnostic test, an AutoZone employee provided Stanford with a written report, which revealed the source of her check engine light as trouble code "P1751," defined as "a fault in the automatic transmission control relay circuit." The report did not suggest any repair parts or direct Stanford to take any further action.

Stanford called her sister Kara Sands the following morning, and the two of them discussed Stanford's vehicle and her visit to AutoZone the night before. According to Kara, the AutoZone employee was unable to provide Stanford with any further details about the trouble code and told Stanford that it was fine to drive the vehicle home. Stanford told Kara that she intended to take the vehicle to a mechanic after work that day, and Kara offered to give her a ride home from the mechanic's shop.

On her way to work, however, Stanford's vehicle stalled and became disabled in the inside, westbound lane of the 13900 block of Northwest Boulevard in Corpus Christi, Texas. Stanford called Kara again and explained the situation. Stanford expressed concern that her vehicle may by struck from behind by another vehicle. Although Stanford had turned the vehicle's emergency flashers on and other motorists were driving around her, Stanford told Kara that she was going to exit her vehicle and push it out of the lane of traffic. Kara believed that doing so would place Stanford in a dangerous position and advised her not to do it.

Stanford elected to push her vehicle off the roadway, and while doing so, she was fatally struck from behind by motorist Dacota Deaver. Deaver later acknowledged that he had taken his eyes off the road at the time of the collision and that the accident probably

3

would not have happened if he had maintained a proper lookout.

Sands brought wrongful death and survival claims against AutoZone based on theories of negligent undertaking and gross negligence.[2] Sands alleges in her live petition that "Stanford's reliance on AutoZone's safe vehicle representations put her in the position she was in on the morning of her death."

After extensive discovery, AutoZone filed a combined no-evidence and traditional motion for summary judgment arguing, *inter alia*, that there was no evidence that AutoZone's undertaking proximately caused Stanford's injuries. The trial court granted the motion without comment, and this appeal ensued.[3]

## II. STANDARD OF REVIEW & APPLICABLE LAW

We review summary judgments de novo. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 646 (Tex. 2020). A summary judgment motion may be brought on traditional or no-evidence grounds. *See* TEX. R. CIV. P.166a.

If a party moves for summary judgment on both no-evidence and traditional grounds, as AutoZone did here, we first consider the no-evidence motion. *See Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39 (Tex. 2017) (citing *Ford Motor Co.*, 135 S.W.3d at 600). "If the non-movant fails to overcome its no-evidence burden on

---

[2] Sands also brought negligence claims against Deaver, but those claims were later severed and are not part of this appeal.

[3] Sands also brought a claim of ordinary negligence against AutoZone. The trial court granted AutoZone's separate motion for partial summary judgment on that claim earlier in the case, and Sands does not appeal that decision.

any claim, we need not address the traditional motion to the extent it addresses the same claim." *Id.*

A party may move for a no-evidence motion for summary judgment "on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). "A no-evidence motion for summary judgment immediately shifts the burden to the nonmovant." *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 514 (Tex. 2022). "To defeat a no-evidence motion, the non-movant must produce evidence raising a genuine issue of material fact as to the challenged elements." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). "Material facts are those facts which affect the outcome of the suit under the governing law." *Smith v. Mosbacker*, 94 S.W.3d 292, 294 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) (cleaned up).

The essential elements of negligence are a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2003). Negligent undertaking is a form of negligence that turns on "whether a defendant acted in a way that requires the imposition of a duty where one otherwise would not exist." *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013) (per curiam); *see, e.g.*, *Osuna v. S. Pac. R.R.*, 641 S.W.2d 229, 230 (Tex. 1982) ("Having undertaken to place a flashing light at the crossing for the purpose of warning travelers, the railroad was under a duty to keep the signal in good repair, even though the signal was not legally required."). In addition to the elements of an ordinary negligence claim, the plaintiff must show: "(1) the defendant

5

undertook to perform services that it knew or should have known were necessary for the plaintiff's protection; (2) the defendant failed to exercise reasonable care in performing those services; and either (a) the plaintiff relied upon the defendant's performance, or (b) the defendant's performance increased the plaintiff's risk of harm." *Nall*, 404 S.W.3d at 555–56.

### III.   NEGLIGENT UNDERTAKING

The parties disagree about AutoZone's duty to Stanford in this case. According to Sands, AutoZone's gratuitous diagnostic service created a legal duty on AutoZone's part to "provide trustworthy advice" to Stanford, just as AutoZone represented in its advertisements. Sands argues that AutoZone breached this duty by telling Stanford that it was okay to drive her vehicle home rather than advising her to take it directly to a qualified mechanic. Essentially, Sands argues that AutoZone's bad advice gave Stanford a false sense of security about the trustworthiness of her vehicle.

AutoZone responds that its undertaking was limited to providing Stanford with the results of the diagnostic test, and it satisfied this obligation. AutoZone notes that it does not provide repair services, and Stanford's vehicle left the store in the same condition as when it arrived. According to AutoZone, Stanford left its store "in a better position" because she had the results from the diagnostic test, which identified a problem with the vehicle's transmission.

We note that "not giving a safety warning is an omission, not an undertaking." *Elephant Ins. Co. v. Kenyon*, 644 S.W.3d 137, 152 (Tex. 2022) (collecting cases). Assuming without deciding that AutoZone's affirmative representation to Stanford that her

6

vehicle was safe to operate constituted an undertaking, we nonetheless conclude that Stanford's injuries were too attenuated from any negligence on AutoZone's part to satisfy proximate cause.

## A.    Applicable Law

"Although a plaintiff asserting a claim for negligent undertaking must prove additional elements relative to the defendant's assumption of a duty, the plaintiff must also prove that the defendant's breach proximately caused the plaintiff's injuries." *Doe v. Messina*, 349 S.W.3d 797, 800 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2000)); *see Nall*, 404 S.W.3d at 555 ("In *Torrington*, we held that a jury submission for a negligence claim predicated on a negligent-undertaking theory requires a broad-form negligence question accompanied by instructions detailing the essential elements of an undertaking claim."). "Proximate cause has two elements: cause-in-fact and foreseeability." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). In its motion for summary judgment, AutoZone argued that there was no evidence of either element.

To satisfy the cause-in-fact requirement, the defendant's negligent act or omission must have been a substantial factor in bringing about the plaintiff's injury without which the harm would not have occurred. *Id.* However, cause-in-fact is not established where the defendant's negligence does no more than furnish a condition which makes the plaintiff's injuries possible. *Id.* More specifically, "[w]here the initial act of negligence was not the active and efficient cause of plaintiffs' injuries, but merely created the condition by which the second act of negligence could occur, the resulting harm is too attenuated from

7

the defendants' conduct to constitute the cause in fact of plaintiffs' injuries." *IHS Cedars*, 143 S.W.3d at 799. "In other words, even if the injury would not have happened but for the defendant's conduct, the connection between the defendant and the plaintiff's injuries simply may be too attenuated to constitute legal cause." *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995).

## B.    Analysis

On appeal, Sands contends AutoZone's negligent undertaking was the cause-in-fact of Stanford's injuries because but for AutoZone's bad advice, "Stanford would not have been on the road driving her car at the time it stalled in the middle of the road." That may be true, but even so, it is not evidence that AutoZone's negligence was the cause-in-fact of Stanford's injuries. Instead, the fact that Stanford was driving her vehicle merely created the condition that made Deaver's negligence possible, and Deaver's failure to maintain a proper lookout was the active and efficient cause of Stanford's injuries and death.[4] *See IHS Cedars*, 143 S.W.3d at 799. Texas courts have reached the same conclusion under similar circumstances. *See Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471–72 (Tex. 1991) ("Plaintiffs assert that, had the sign functioned properly, Perez would not have been at the place where the collision occurred at the time it occurred. We conclude that these particular circumstances are too remotely connected with [the sign manufacturer's] conduct."); *Bell v. Campbell*, 434 S.W.2d 117, 120, 122 (Tex. 1968) ("It

---

[4] AutoZone argues that Stanford's own negligence further weakens the causal link between its alleged negligent undertaking and her injuries and death. According to AutoZone, Stanford's decision to exit her vehicle and push it from behind while her back was turned to oncoming traffic was another active and efficient cause that cannot be attributed to AutoZone. Because we conclude that AutoZone's negligence was not the proximate cause of Stanford's death, we find it unnecessary to consider Stanford's conduct in our analysis.

is clear that Payton, Bell and Bransford would not have been injured but for respondents' negligence, which created the condition that made the second collision possible. The active and immediate cause of the second collision, however, was an entirely independent agency, Fore."); *Fort Worth & D.C.R. Co. v. Garrett*, 28 S.W.2d 301, 305 (Tex. App.—Fort Worth 1930, writ ref'd) (finding railroad company that blocked a crossing and directed its employee to direct traffic was not the cause-in-fact of the employee's death because "the act of the automobile driver in hitting the deceased" was "an independent and efficient intervening cause"); *City of Vernon v. Lisman*, 17 S.W.2d 769, 770–71 (Tex. Comm'n App. 1929) ("So here the act of the driver of the passing automobile in striking Lisman was itself an efficient intervening cause of his death, whether such act was negligence or not. It adds nothing to plaintiff's case that the accident would not have happened but for the negligence of the city in maintaining the mudhole.").

We conclude that Sands has failed to raise a genuine issue of material fact as to the first element of proximate cause because, as a matter of law, AutoZone's alleged negligent undertaking was too attenuated to serve as the cause-in-fact of Stanford's injuries and resulting death. Consequently, the trial court did not err in granting AutoZone's no evidence motion for summary judgment on this claim.

### IV. GROSS NEGLIGENCE

Sands also brought a claim against AutoZone for gross negligence based on the same undertaking. Generally, a claimant who cannot support an ordinary negligence claim cannot succeed on a gross-negligence claim. *Nowzaradan v. Ryans*, 347 S.W.3d 734, 739 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("[E]xcepting certain worker's

9

compensation cases, it is well established that a finding of ordinary negligence is prerequisite to a finding of gross negligence." (citing *Sonic Sys. Int'l, Inc. v. Croix*, 278 S.W.3d 377, 395 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *see Rayner v. Claxton*, 659 S.W.3d 223, 260–61 (Tex. App.—El Paso 2022, no pet.) ("[W]e have already determined the condition of the truck played no part in the incident. Accordingly, no act or omission with respect to the truck's condition can be the act or omission which serves as a basis for a finding of gross negligence."); *RT Realty, L.P. v. Tex. Util. Elec. Co.*, 181 S.W.3d 905, 915 (Tex. App.—Dallas 2006, no pet.) ("Without a duty, there can be no negligence and no gross negligence."). Having already found that Sands's negligent undertaking claim fails as a matter of law, so too must her gross negligence claim based on the same undertaking. *See Nowzaradan*, 347 S.W.3d at 739. Sands's sole issue is overruled.

## V.   CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Delivered and filed on the
20th day of July, 2023.

10