# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 5, 2025

Lyle W. Cayce
Clerk

No. 24-50810

—————————

Destiny Robledo, *individually, and in her capacity as next friend of her minor child, H.R.*,

*Plaintiff—Appellant*,

*versus*

United States of America,

*Defendant—Appellee*.

—————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:23-CV-796

—————————————————

Before Stewart, Clement, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

In this medical malpractice case, Destiny Robledo sued the Government under the Federal Tort Claims Act (FTCA) for obstetrical medical care she received during childbirth. She alleged that her doctor's ill-judged response to her baby's shoulder dystocia resulted in severe and permanent injury to the baby. The district court determined that shoulder dystocia constitutes an obstetrical emergency, such that, under Texas law, a plaintiff must show "willful and wanton negligence" to sustain a claim. Reasoning that the heightened standard equated to the showing required for

punitive damages, the court concluded that, because the FTCA does not waive sovereign immunity for punitive damages, it lacked jurisdiction over Robledo's claims and dismissed her case under Federal Rule of Civil Procedure 12(b)(1). But the district court erred, in two ways: First, it improperly presumed that Robledo's doctor provided emergency medical care as a matter of law. Second, it conflated the resulting heightened standard Robledo must meet to prove liability—willful and wanton negligence—with the nature of damages she could recover for a breach of that standard. Accordingly, we reverse and remand.

## I.

In January 2021, Destiny Robledo arrived at Baylor Scott & White Medical Center in Waco, Texas, to deliver her baby, H.R. Robledo was treated by Dr. Keilah Ketron, who was a second-year family medicine resident physician. During Robledo's delivery, Ketron observed shoulder dystocia, a complication in which "one or both of [the] baby's shoulders get stuck during vaginal delivery."[1] According to Robledo's complaint, Ketron "pulled on" H.R.'s head with excessive force to resolve the complication, which caused severe and permanent nerve damage to H.R.

Robledo sued, individually and on behalf of H.R., under the FTCA, alleging that Ketron "negligently and/or with willful and wanton negligence (gross negligence) deviated from the [appropriate] standards of care" while responding to shoulder dystocia. Robledo also alleged that the attending physician, Dr. Kimberly Micus, similarly acted "negligently and/or with willful and wanton negligence (gross negligence)" by failing to supervise Ketron during Robledo's labor. Robledo sought damages for, among other

---

[1] *E.g.*, *Shoulder Dystocia*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/22311-shoulder-dystocia (last visited July 16, 2025).

things, "medical care and attention and associated travel expense for the treatment of the injuries caused to her minor child, H.R."[2]

The Government moved to dismiss under Rule 12(b)(1), arguing that the district court lacked jurisdiction because the FTCA does not waive sovereign immunity for gross or "willful and wanton" negligence, *cf. Marsillo v. Dunnick*, 683 S.W.3d 387, 393 (Tex. 2024) (noting that "willful and wanton negligence is at least gross negligence"), the standard Texas law requires for claims involving emergency medical care, *see* Tex. Civ. Prac. & Rem. Code § 74.153(a). In opposition, Robledo asserted that the FTCA does not exclude acts of gross negligence and that whether there was a medical emergency is a question of fact that cannot be answered at the motion-to-dismiss stage of the case.

The magistrate judge prepared a report recommending that Robledo's claims be dismissed. The magistrate judge determined that under Texas precedent "shoulder dystocia is an obstetrical emergency" as a matter of law, requiring a plaintiff to prove "willful and wanton negligence" to sustain a claim. Based on that premise, the magistrate judge reasoned that the district court lacked jurisdiction over Robledo's claims because damages resulting from willful and wanton negligence constitute punitive damages under traditional common law principles, and the FTCA does not waive sovereign immunity for punitive damages. *See* 28 U.S.C. § 2674. The district court

---

[2] Destiny Robledo's husband, Jimmy, was also a named plaintiff in the complaint, alleging similar claims and seeking similar damages. He is not a party to this appeal.

The complaint alleges—and the Government does not dispute—that the named physicians involved in the incident are "federal employees for the purposes of the Federal Tort Claims Act." We assume, without deciding, that this assertion is true for the purpose of this appeal.

adopted the magistrate judge's report and recommendation and dismissed Robledo's claims.

Robledo now appeals. She contends that (1) not every instance of shoulder dystocia is a "medical emergency," (2) the district court had jurisdiction over her claims because Robledo can recover compensatory damages under Texas law for gross negligence, and (3) Micus's failure to supervise is not shielded from liability under the FTCA.[3]

## II.

A district court's grant of a motion to dismiss under Rule 12(b)(1) is reviewed *de novo*, "tak[ing] the well-pled factual allegations of the complaint as true and view[ing] them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). "[U]nder Rule 12(b)(1), the court may find a plausible set of facts by considering any of the following: '(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Id.* (quoting *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). "[T]he plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). However, "[a] dismissal for lack of jurisdiction [under Rule 12(b)(1)] will not be affirmed unless 'it appears certain that the plaintiff cannot prove any set of facts in support of [her] claim that would entitle plaintiff to relief.'" *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 734 (5th Cir. 2020) (quoting *Gilbert v. Donahoe*, 751 F.3d 303, 307 (5th Cir. 2014)).

---

[3] Because our analysis of Robledo's first two issues is dispositive of the appeal, we do not address her third claim.

No. 24-50810

## III.

The district court rested its Rule 12(b)(1) dismissal of Robledo's claims for lack of jurisdiction on two legal premises: First, surveying Texas precedent, the court presumed that Robledo's doctor provided emergency medical care as a matter of law. Second, and building on the first, the court reasoned that the resulting heightened standard Robledo must meet to prove her claims—willful and wanton negligence—meant that she could only recover damages that were punitive in nature, for which the FTCA does not waive immunity.

As we next explain, each of the court's premises is faulty. As a result, dismissal of Robledo's claims at the Rule 12 stage of the proceedings was improper.

## A.

In adjudicating claims under the FTCA, we look to "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *Davila v. United States*, 713 F.3d 248, 261 (5th Cir. 2013). In this case, that is Texas. *See Ellis v. United States*, 673 F.3d 367, 372 (5th Cir. 2012).

For a claim arising out of the "provision of emergency medical care . . . in an obstetrical unit," a Texas plaintiff must show that the provider breached the applicable standard of care with "willful and wanton negligence." Tex. Civ. Prac. & Rem. Code § 74.153(a). A separate statute defines "emergency medical care" as

> bona fide emergency services provided after the sudden onset of a medical or traumatic condition manifesting itself by acute symptoms of sufficient severity, including severe pain, such that the absence of immediate medical attention could reasonably be expected to result in placing the patient's health in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part.

5

*Id.* § 74.001(a)(7).

Relying on Texas caselaw, the district court determined that H.R.'s shoulder dystocia constituted an obstetrical emergency. True enough, the Supreme Court of Texas has stated that shoulder dystocia is an "obstetrical emergency," as have several Texas courts of appeals. *Franka v. Velasquez*, 332 S.W.3d 367, 370 (Tex. 2011) ("[B]ut delivery of the baby's front shoulder was obstructed, a relatively infrequent but well-recognized obstetric emergency known as shoulder dystocia."); *Taber v. Roush*, 316 S.W.3d 139, 144 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Shoulder dystocia is an obstetric emergency."); *Banks v. Columbia Hosp. at Med. City Dallas Subsidiary, L.P.*, 233 S.W.3d 64, 70–71 (Tex. App.—Dallas 2007, pet. denied) ("[T]he baby's delivery was hampered by two obstetrical emergencies: (1) double nuchal cord around the baby's neck; and (2) shoulder dystocia.").

However, accepting that Texas courts have recognized shoulder dystocia as an obstetrical emergency does not resolve our inquiry. According to § 74.153(a)'s text, the prerequisite to triggering the statute's "willful and wanton negligence" standard is whether there was "provision of emergency medical care." Tex. Civ. Prac. & Rem. Code § 74.153(a); *see Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 718 (Tex. 2024) ("[W]e look to the statute's text—to the words it actually uses . . . ."). In determining that shoulder dystocia constitutes an obstetrical emergency, the district court addressed the prefatory condition but not Ketron's ensuing care, *i.e.*, whether she provided "bona fide emergency services" to address the emergent situation. Tex. Civ. Prac. & Rem. Code § 74.001(a)(7). And whether "emergency medical care" is provided in every instance of shoulder dystocia—particularly assessed at the pleadings stage—by no means appears to be a settled question in Texas.

No. 24-50810

The Supreme Court of Texas has recently addressed shoulder dystocia in the context of § 74.153(a) without indicating that a physician necessarily provides "emergency medical care" when treating the condition. In *Texas Health Presbyterian Hospital of Denton v. D.A.*, a physician treating a case of shoulder dystocia "reached into the birth canal . . . [to] dislodg[e] the baby's shoulder" but caused injury to the baby during the procedure. 569 S.W.3d 126, 128 (Tex. 2018). The issue in the case was limited to statutory interpretation, namely, whether § 74.153(a) applies to "claims arising from emergency medical care provided in a hospital's obstetrical unit regardless of whether the patient was first evaluated or treated in a hospital emergency department." *Id.* The court answered yes and merely assumed *arguendo* the trial court's conclusion that the "measures [the doctor] took to dislodge the baby's shoulder constituted emergency medical care." *Id.* at 129 & n.3. Critically, the court "express[ed] no opinion" on the merits of that point. *Id.* *D.A.* thus cuts against the district court's implicit presumption in this case that, according to Texas precedent, physicians provide emergency medical care anytime they treat a patient who presents with shoulder dystocia.

*Glenn v. Leal* even more clearly contradicts the district court's conclusion here. 596 S.W.3d 769 (Tex. 2020) (per curiam). *Glenn* also involved shoulder dystocia and a physician who "perform[ed] maneuvers to dislodge the shoulder." *Id.* at 770. There, the Supreme Court of Texas reversed and remanded for a new trial because the jury charge at issue was deemed erroneous given the court's decision in *D.A. Id.* at 772. Important for this case, the court explained that the erroneous jury charge was harmful because "the issue of whether [the physician] provided emergency care to [the mother] was critical *and contested.*" *Id.* at 770, 772 (emphasis added). In other words, the court left to the jury the question of whether the physician had provided emergency medical care in response to shoulder dystocia—a puzzling decision if the question is settled as a matter of law. Indeed, the

magistrate judge's report mentioned *Glenn* as "suggesting that shoulder dystocia may not be an emergency," but gave no further analysis.

That was error. If the issue remained contested for the *Glenn* jury, then *a fortiori*, that analysis was required at the pleadings stage in this case. Robledo alleges that "the care provided by [Ketron] [was] not emergency medical care within the meaning of [the statute]" because there was "adequate time to properly perform routine . . . maneuvers" to relieve H.R.'s shoulder dystocia. Yet the district court never squarely addressed whether Ketron provided "emergency medical care"; it did not engage at all with § 74.001(a)(7)'s definition of that term. Instead, the court seemingly presumed a categorical rule that a physician provides such care whenever there is an obstetrical emergency, *e.g.*, shoulder dystocia. And the district court similarly did not account for the facts alleged in Robledo's complaint and the supporting affidavits she proffered regarding the incident, despite the rule that we "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff" at the Rule 12 stage. *Lane*, 529 F.3d at 557. At bottom, the district court's approach appears inconsistent with how the Supreme Court of Texas has analyzed shoulder dystocia for the purposes of applying § 74.153(a). *See Glenn*, 596 S.W.3d at 772; *D.A.*, 569 S.W.3d at 129 n.3.

Assessing Robledo's complaint *de novo* under Rule 12(b)(1), we conclude she has plausibly alleged facts that put at issue whether Ketron provided "emergency medical care" in responding to H.R.'s shoulder dystocia, at least to hurdle the Government's motion to dismiss. Whether the evidence will show that Ketron provided such care, so that § 74.153(a)'s heightened negligence standard governs, is a question we leave for the district court.

**B.**

Assuming *arguendo* that Ketron provided "emergency medical care" as defined by § 74.001(a)(7), the district court nonetheless erred by extending its reading of Texas law to hold that Robledo's claims were barred because the only damages she may recover for willful and wanton negligence are punitive in nature and thus proscribed by the FTCA.

True enough, under the FTCA, "[t]he United States . . . shall not be liable . . . for punitive damages." 28 U.S.C. § 2674. But Robledo's complaint makes clear that she seeks only compensatory, not punitive, damages. Her complaint demands damages for "medical care and attention," "associated travel expense for the treatment," and "personal services . . . specifically related to the injury," none of which can be characterized as punitive. Indeed, Texas law distinguishes "[e]xemplary damages"—which include punitive damages and are "awarded as a penalty or by way of punishment"—from "[e]conomic damages," which are "compensatory damages intended to compensate a claimant for actual economic or pecuniary loss." Tex. Civ. Prac. & Rem. Code § 41.001(4), (5).

Neither the district court nor the Government cites to any on-point authority supporting the district court's logical progression that (1) Robledo must prove gross or "willful and wanton negligence" to sustain her claims, (2) so whatever damages she may recover are punitive in nature, and (3) as a result, her claims are not encompassed by the FTCA's waiver of immunity. The Government relies on a Texas intermediate court's statement that "a gross-negligence finding is relevant only to an assessment of punitive damages." *Nowzaradan v. Ryans*, 347 S.W.3d 734, 741 (Tex. App.—Houston [14th Dist.] 2011, no pet.). But the same court also explained that "a finding of ordinary negligence is prerequisite to a finding of gross negligence" and

9

that "punitive damages are not available until a plaintiff proves his entitlement to actual damages." *Id.* at 739, 741; *see also Ford Motor Co. v. Miles*, 967 S.W.2d 377, 390 (Tex. 1998) (Gonzalez, J., concurring) ("Gross negligence presumes a negligent act or omission and includes two further elements[.]"). In other words, a plaintiff who proves gross negligence may under Texas law be awarded both her economic damages as well as punitive damages. That she cannot recover punitive damages for a claim under the FTCA removes one, but not both, of those categories of damages from the equation. The district court erred by conflating the heightened legal standard Robledo may need to meet to prove liability—willful and wanton negligence—with the nature of damages recoverable for breach of that standard.

Our conclusion is consistent with the U.S. Supreme Court's ruling in *Molzof v. United States*, in which the Court "conclude[d] that § 2674 bars the recovery only of what are *legally* considered 'punitive damages' under traditional common-law principles." 502 U.S. 301, 312 (1992). The Court read the FTCA to allow "awards against the United States of those state-law damages which are intended by state law to act as compensation for injuries sustained as a result of the tort, and to preclude awards of damages which are intended to act as punishment for egregious conduct." *Id.* at 305. Insofar as Robledo seeks compensatory damages for H.R.'s injuries, the FTCA does not bar her claims.

\* \* \*

For the foregoing reasons, we REVERSE the district court's dismissal of Robledo's claims under Rule 12(b)(1) and REMAND for further proceedings consistent with this opinion.